AIMA NEAULANI ALULI, NOA TONG ALULI
and KEPOIKAI CHOY ALULI, Trustees of
the Estate of NOA W. ALULI, Deceased,
Plaintiffs-Appellees, *v.* RICHARD V.
TRUSDELL, Defendant-Appellant

No. 5256

APRIL 4, 1973

RICHARDSON, C.J., ABE, LEVINSON,
KOBAYASHI, JJ., AND CIRCUIT JUDGE WONG IN PLACE OF
MARUMOTO, J., DISQUALIFIED

OPINION OF THE COURT BY ABE, J.

The plaintiffs-appellees, Aima Neaulani Aluli, et al., hereinafter referred to as "Landlord" are the owners of "The Iolani," an apartment building in Honolulu, Hawaii, and the defendant-appellant, Richard V. Trusdell, hereinafter referred to as "Tenant" occupied one of the apartments in the building on a month-to-month tenancy. On August 4, 1971, the landlord served upon the tenant a notice to vacate on or before August 31, 1971. Upon the tenant's refusal to vacate the premises, the landlord commenced summary possession proceedings in the Honolulu District Court on September 9, 1971.

The tenant's second defense stated:

The primary purpose of this eviction is to block, hamper or obstruct the tenant union of which the defendant is the organizer and member in violation of the defendant's rights of freedom of speech, freedom of association and right to petition government for a redress of grievances, and defendant's inherent right to petition government all as is more fully outlined in the counterclaim.

Upon the trial, the district court granted summary possession for the landlord, ruling that the second defense did not raise any valid constitutional defenses to the summary possession action. The tenant appealed from

the judgment. The primary issue in this appeal is whether the tenant had any valid constitutional defenses to the action.

Before stating our reasons for concluding that the tenant's allegations do not raise a constitutional defense, we wish to point out what we consider inadequacies and one-sidedness of the tenant's argument on the issue.

First, we believe that the rights of the landlord and tenant should be balanced. The landlord seeks to vindicate his right of possession as an incident of the ownership of the subject premises. On the other hand, the tenant's right is a permissive right of possession pursuant to a month-to-month tenancy terminable at the end of any month at the option of either party. Thus, these two "rights" may be the opposite sides of the same coin.

Second, the tenant appears to have assumed that the landlord does not have any First Amendment rights. If it is true that he is seeking possession of the rented premises for the sole reason that he disagrees or dislikes the tenant's communicative or associative activities, is not the landlord also protected by the First Amendment in expressing these disagreements or dislikes? Is not the requesting of judicial relief "petitioning government for redress of grievances"?

Third, in *Lemle* v. *Breeden,* 51 Haw. 426, 462 P.2d 470 (1969), we stated that "[t]he application of an implied warranty of habitability in leases gives recognition to the changes in leasing transactions today. It affirms the fact that *a lease is,* in essence, a sale as well as a transfer of an estate in land and is, more importantly, *a contractual relationship.*" (Emphasis added.) 51 Haw. 426, 433, 462 P.2d 470, 474.

Thus, the landlord-tenant relationship is a contractual one in our jurisdiction. If we accept the tenant's contention, it would mean that we would be substantially altering this relationship and impairing the traditional right of a landlord to recover possession of the demised premises

under the terms of a lease. Or otherwise stated, the tenant's obligation under a month-to-month tenancy to return the possession of the demised premises to the landlord upon the termination of such tenancy is abrogated. *United States* v. *Blumenthal*, 315 F.2d 351 (3d Cir. 1963) ; *Wormood* v. *Alton Bay Camp Meeting Ass'n*, 87 N.H. 136, 175 A. 233 (1934) ; *De Wolfe* v. *Roberts*, 229 Mass. 410, 412, 118 N.E. 885, 887 (1918). If this court were to rule as contended by the tenant, its ruling might contravene the provisions of the United States Constitution, Article I, Section 10, which states in part: "No State shall . . . pass any . . . law impairing the Obligation of Contracts."[1]

We are upholding the district court's ruling that the First Amendment rights[2] claimed by the tenant did not constitute a defense to the summary possession action brought by the landlord for the following two reasons:

(1) We do not believe that the tenant's First Amendment rights have been infringed upon or abrogated by the actions of the landlord. Even after the landlord regains possession of the premises under the summary possession action, the tenant may retain membership in the tenant's union, petition the government for redress of grievances and speak as freely about the condition of the premises, as when he is in possession of the premises. Furthermore, we do not see how the tenant is punished in any way for his activities. Being a month-to-month tenant, he had no right to demand that his tenancy be

---

[1] It is interesting to note that the dissent asserts that "article 1, section 10 'protecting the obligation of contracts against state action is directed only against the impairment by legislation and not judgments of courts.' " Then on the other hand it contends that a landlord as an incident of ownership of land may recover possession of the premises by summary possession action. "However, when the enforcement of those rights is accomplished by court action, such action may be state action and constitutional prohibitions would then be applicable." Under the dissent, how is one to determine when a court's judgment is a state action and when it is not a state action?

[2] The rights of freedom of speech and freedom of association, and right to petition government for a redress of grievances, claimed to be a defense to a summary possession action by the tenant will be referred to collectively as "First Amendment rights."

extended once the current term expired. When the landlord repossesses the premises at the end of the current term, the tenant is not being deprived of anything except his nonproprietary expectancy that his tenancy will be extended another term.

At most, the tenant's only complaint is that allowing the landlord to regain possession of the premises will lessen his interest in the subject matter about which he wishes to exercise his First Amendment rights. We do not believe the First Amendment rights claimed by the tenant operate to prefer the tenant's expectancy of continued possession of the premises over the right of the landlord to regain possession at the end of the tenant's term, so as to encourage the tenant to continue exercising his First Amendment rights in the hopes that the conditions of his tenancy would be improved.

As we have already stated, whether he is dispossessed or not, he can continue to exercise the constitutional rights he claims that the summary possession action deprives him of. Nothing is being taken away from him by the summary possession action because the landlord, under the terms of the month-to-month tenancy as incidental to the ownership of the premises, has the right to regain possession of the premises upon the termination thereof.

(2) We cannot see how the requisite state action exists in this case. The tenant's contention of state action requisite for the application of First Amendment guarantees is unsupported by the authorities he cites. The tenant relies on *New York Times Co.* v. *Sullivan,* 376 U.S. 254 (1964) ; *Shelley* v. *Kraemer,* 334 U.S. 1 (1948) ; and *American Federation of Labor* v. *Swing,* 312 U.S. 321 (1941), in finding that the use of the court by the landlord to regain possession of the premises under the summary possession statute constituted state action. We believe that each of these cases is distinguishable from the case now before us.

*Shelley* v. *Kraemer, supra,* 334 U.S. 1 (1948), established that a state court's enforcement of "restrictive covenants which have as their purpose the exclusion of persons of designated race or color from the ownership or occupancy of real property," *id.* at 4, constituted state action and thus violated the equal protection provisions of the Fourteenth Amendment of the United States Constitution. The United States Supreme Court significantly expanded the concept of state action in this decision which spawned uncertainties that are still unresolved. One commentator, after reviewing the scholarly commentary and cases on the topic of state action with respect to constitutional guarantees against racial discrimination declared that "[t]he field [state action] is a conceptual disaster area." Black, *Foreword: "State Action," Equal Protection, and California's Proposition 14,* 81 Harv. L. Rev. 69, 95 (1967).

In *Edwards* v. *Habib,* 397 F.2d 687 (D.C. Cir. 1968), a landlord (Habib) evicted a tenant (Edwards) after the tenant had reported violations of the District of Columbia's sanitation codes. Although the Court of Appeals, through Judge J. Skelly Wright, discussed Edwards' argument that to allow an eviction on the basis that she had reported building code violations would abridge her First Amendment rights of free speech and of petitioning the government for redress of grievances, the court decided the case on public policy and statutory construction. *Id.* at 699. This discussion, however, is of interest since the argument of the tenant appears to parallel that of the dictum in the *Habib* case.

Judge Wright stated "the contours of *Shelley* remain undefined and it is uncertain just how far its reasoning extends." *Id.* at 691. Furthermore, he stated that "[i]t may be, however, that what is state action under the Fourteenth Amendment is not always state action under the First. To begin with, the Reconstruction amendments were enacted with a particular purpose in mind:

to eradicate forever the vestiges of slavery and the black codes. In addition, the language of the First Amendment, 'Congress shall make no law . . . ,' is not as amenable as the Fourteenth Amendment is to the construction that there is state action by inaction or by judicial action which merely gives legal effect to privately made decisions. Indeed those who have expounded this theory of state action have been careful to limit their case to the area of racial discrimination." *Id.* at 693 (footnotes omitted). *See also,* Black, *Foreword: "State Action," Equal Protection, and California's Proposition 14,* 81 Harv. L. Rev. 69 (1967); Van Alstyne & Karst, *State Action,* 14 Stan. L. Rev. 3 (1961).

The tenant cites *New York Times Co.* v. *Sullivan,* 376 U.S. 254 (1964) and *American Federation of Labor* v. *Swing,* 312 U.S. 321 (1941), to support his contention that state action required before the limitations of the First Amendment are invoked is present in this case. We agree that these cases stand for the proposition that common law or judge-made law is the functional equivalent of statutory law; and that where the state legislature is constitutionally proscribed from enacting laws which would abridge First Amendment rights, the judicial law-making power should likewise be circumscribed.

In *American Federation of Labor* v. *Swing, supra* at 325, the United States Supreme Court stated:

> We are asked to sustain a decree [of a state court] which for purposes of this case asserts *as the common law of a state* that there can be no "peaceful picketing or peaceful persuasion" in relation to any dispute between an employer and a trade union unless the employer's own employees are in controversy with him.
>
> Such a ban of free communication is inconsistent with the guarantee of freedom of speech [emphasis added]. . . .

In the *Times* v. *Sullivan* case, *supra,* what constituted state action was judicial law making and not judicial enforcement of the state law in itself. The case involved a civil libel action prosecuted by Sullivan, an elected public official of Alabama, based on the contents of an editorial advertisement printed by the New York Times Co. The United States Supreme Court summarized the Alabama law and at page 268 stated:

> The question before us is whether this *rule of liability* as applied to an action brought by a public official against critics of his official conduct, abridges the freedom of speech and of the press that is guaranteed by the First and Fourteenth Amendments (emphasis added).

Thus, under *Times* v. *Sullivan, supra,* when state power, whether it be judicial or legislative, is exercised to promulgate or maintain laws, the exercise of that power is subject to applicable constitutional limitations.[3] We are certain that the United States Supreme Court did not mean to state as a general proposition, as the tenant contends, that any judicial enforcement of any law constitutes a sufficient exercise of state power so as to require constitutional restraints.

The summary possession statute, HRS § 666-1 of this state, does not, on its face, limit the exercise of First Amendment rights of the tenant. Our construction of this statute in no way abridges a tenant's exercise of First Amendment rights. The exercise of state power here is aimed at restoring possession of the premises to the person entitled thereto. There is no attempt here by the

---

[3]"Although this is a civil lawsuit between private parties, the Alabama courts have applied a state rule of law which petitioners claim to impose invalid restrictions on their constitutional freedoms of speech and press. It matters not that that law has been applied in a civil action and that it is common law only, though supplemented by statute. See, *e.g.,* Alabama Code, Tit. 7, §§ 909-917. The test is not the form in which state power has been applied but, whatever the form, whether such power has in fact been exercised . . . ." 376 U.S. at 265.

exercise of judicial or legislative law making power to regulate or limit the content or mode of communication or association in which a tenant may desire to engage in.

We hold that when a court of this state awards possession to a landlord even if the landlord is motivated by his disagreement with the actions and speech of the tenant he is evicting, no state action is involved, which denies or infringes the tenant's right to exercise his First Amendment Constitutional rights.

Affirmed.

*Edward C. Kemper, III (Mattoch, Edmunds, Kemper & Brown* of counsel) for defendant-appellant.

*Keith J. Steiner (Padgett, Greeley, Marumoto & Steiner* of counsel) for plaintiffs-appellees.

---

DISSENTING OPINION OF LEVINSON, J.

I dissent.

The tenant in this case asserts that the landlord wishes to evict him because of his tenant union associations and because he, along with other union members, attempted to communicate complaints about the apartment complex to the Lieutenant Governor's Office and the State Office of Consumer Protection. Eviction for such a reason, argues the tenant, amounts to state action which abridges his rights of freedom of speech and assembly, and his right to petition the government for redress of grievances, all of which are protected by the First Amendment of the United States Constitution[1] and article I, section 3 of the Constitution of the State of Hawaii.[2]

---

[1]The First Amendment of the U.S. Constitution states in pertinent part as follows:

Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

[2]Article I, section 3 of the Hawaii Constitution states in pertinent part as follows:

I think that the making of such complaints and the association of such tenants are examples of conduct which is afforded protection by the Constitutions of the United States and Hawaii, despite the fact that the shield of HRS § 666-43 (1972 Supp.), which prohibits retaliatory evictions, is not available to the tenant in this case because his complaints were not directed to the Department of Health as required by the statute. The unavailability of the statute, however, in no way affects the tenant's ability to invoke any existing constitutional defenses to a retaliatory eviction. There is no doubt in my mind that viable constitutional defenses do exist.

The majority states that it believes the landlord's ownership right of possession and the tenant's "permissive" right of possession should be balanced. This is an inaccurate and misleading delineation of the issues. The process which this court undertakes actually requires balancing the property rights of the landlord against the freedom of expression rights of the tenant, and it involves constitutional considerations of a greater magnitude than the majority's analysis indicates.

The majority characterizes the landlord's use of the summary possession process for purposes of retaliatory eviction as an exercise of his rights of free speech and to petition the government for redress of grievances. In no case that I have been able to discover has a landlord ever argued that retaliatory eviction is constitutionally protected conduct and, needless to say, the majority opinion does not cite any. The most complimentary term which can be used to describe this particular piece of logic is that it is novel; it would be more accurate, however, to say that it reflects a complete failure to comprehend the meaning of the right to freedom of expression.

Finally, the majority suggests that acceptance of the tenant's contentions would contravene article I, section

---

No law shall be enacted . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble and to petition the government for a redress of grievances.

10 of the United States Constitution which prohibits states from passing any law impairing the obligation of contracts. If the majority really believes this, it would have to hold in an appropriate case that HRS § 666-43 (a) (1972 Supp.) is unconstitutional. Such a holding would be contrary to *East New York Savings Bank* v. *Hahn,* 326 U.S. 230 (1945); *Norman* v. *Baltimore & O. Ry.,* 294 U.S. 240 (1935); *Home Building & Loan Ass'n* v. *Blaisdell,* 290 U.S. 398 (1934); *Marcus Brown Holding Co.* v. *Feldman,* 256 U.S. 170 (1921).[3] Moreover, such an analysis is patently superficial, in view of the fact that

---

[3]Many changes in the law by means of legislative enactment which affect pre-existing contractual obligations have been held by the Supreme Court not violative of the constitutional prohibition against the impairment of the obligations of contract. The cases so holding have arisen in the areas of rent control, mortgages, and "gold clause" provisions. With respect to this first group, an important case was Marcus Brown Holding Co. v. Feldman, 256 U.S. 170 (1921), in which a landlord sought to oust a holdover tenant and the tenant relied as a defense upon a state statute providing for the suspension of summary possession proceedings under emergency circumstances. The Court held that the landlord was not deprived of his rights under the contract clause, and Justice Holmes, writing for the Court, said at 198:

> In the present case more emphasis is laid upon the impairment of the obligation of the contract of the lessees to surrender possession and of the new lease which was to have gone into effect upon October 1, last year. But contracts are made subject to this exercise of the power of the State when otherwise justified, as we have held this to be.

Laws affecting pre-existing contracts have likewise been found constitutional in Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398 (1934), wherein the appellant contested the validity of a Minnesota mortgage moratorium law providing for the postponement of foreclosure sales and the extension of redemption periods in time of emergency, claiming it to be repugnant to the contract clause. In sustaining the statute's constitutionality, Chief Justice Hughes, writing for the Supreme Court, stated that the clause "is not an absolute one and is not to be read with literal exactness like a mathematical formula." 290 U.S. at 428. *Accord,* East New York Savings Bank v. Hahn, 326 U.S. 230 (1945), where, in following Home Building & Loan Ass'n v. Blaisdell, *supra,* Justice Frankfurter described the governing constitutional principle as follows: "[W]hen a widely diffused public interest has become enmeshed in a network of multitudinous private arrangements, the authority of the State 'to safeguard the vital interests of its people,' 290 U.S. at 434, is not to be gainsaid by abstracting one such arrangement from its public context and treating it as though it were an isolated private contract constitutionally immune from impairment." 326 U.S. at 232. Finally, Norman v. Baltimore & O. Ry., 294 U.S. 240 (1935), one of the gold clause cases, involved bonds providing for payment in gold coin of the United States of or equal to the standard of weight and fineness existing on the date of issue. The Court held that the gold clauses were incompatible with the public interest and could not be enforced.

the U.S. Supreme Court has long held that article I, section 10 "protecting the obligation of contracts against state action is directed only against impairment by legislation and not judgments of courts." *Tidal Oil Co.* v. *Flanagan,* 263 U.S. 444, 451 (1924) ; *accord, Barrows* v. *Jackson,* 346 U.S. 249, 260 (1953). Moreover, the test of impairment is one of reasonableness; the strength of the public interest must be balanced against the reliance and reasonable expectations of those affected. *Home Building and Loan Ass'n* v. *Blaisdell, supra,* 290 U.S. 398 (1934). In these particular circumstances, not only are we dealing with a court decision concerned with constitutional principles rather than a legislative act, but the societal interest in prohibiting retaliatory evictions far outweighs any reliance or expectancy interest on the part of landlords.

The landlord cannot ordinarily be denied those rights which accrue as incidents of ownership, including a general right to summary possession. However, when the enforcement of those rights is accomplished by court action, such action may be state action and constitutional prohibitions would then be applicable. Since retaliatory evictions inhibit rights of tenants under the First Amendment of the U.S. Constitution and article I, section 3 of the Hawaii Constitution, judicial enforcement of such evictions constitutes state action, as explained later in this opinion, and should not be decreed.

The conflict between property and civil rights has arisen before the courts in prior cases. In *Marsh* v. *Alabama,* 326 U.S. 501 (1946), the question presented was whether a state can impose criminal punishment on a person who undertakes to distribute religious literature on the premises of a company-owned town contrary to the wishes of management. Justice Black, writing for the Court, made the following definitive statement at 509:

> When we balance the Constitutional rights of owners of property against those of the people to

enjoy freedom of press and religion, as we must here, we remain mindful of the fact that the latter occupy a preferred position. As we have stated before, the right to exercise the liberties safeguarded by the First Amendment "lies at the foundation of free government by free men" and we must in all cases "weigh the circumstances and . . . appraise the . . . reasons . . . in support of the regulation . . . of the rights." *Schneider* v. *State,* 308 U.S. 147, 161. In our view the circumstance that the property rights to the premises where the deprivation of liberty, here involved, took place, were held by others than the public, is not sufficient to justify the State's permitting a corporation to govern a community of citizens so as to restrict their fundamental liberties and the enforcement of such restraint by the application of a state statute. (Footnotes omitted)

The Court concluded that the state's preference of property rights, through its trespass statute, over First Amendment rights was unconstitutional.

In *Edwards* v. *Habib,* 397 F.2d 687 (D.C. Cir. 1968), *cert. denied,* 393 U.S. 1016 (1969), the tenant claimed eviction in retaliation for the reporting of conditions to the proper authorities, after which forty housing code violations were discovered and the landlord was ordered to repair. The court favorably considered the arguments that the private retaliatory action by the landlord became an impermissible governmental restriction of the tenant's right to petition the government when it was enforced by the courts, or, even if not, that the tenant's right to report violations of law is directly protected against private as well as governmental interference. With regard to this discussion the court stated at 695:

The question in the instant case would then be whether a court can consistently with the Constitution prefer the interests of an absentee landlord in

> evicting a tenant solely because she has reported violations of the housing code to those of a tenant in improving her housing by resort to her rights to petition the government and to report violations of laws designed for her protection. On this theory, if it would be unreasonable to prefer the landlord's interest, it would also be unconstitutional. Mr. Justice Black, who is not prone to weigh interests where First Amendment rights are involved, seems to have taken just this approach in writing for the Court in *Marsh* v. *State of Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), which, like the instant case, involved state-aided privately-initiated abridgement of First Amendment freedoms. (Footnotes omitted)

But, because the court was able to hold that the Congressional policy in enacting District of Columbia housing regulations for the protection of tenants would be contravened by retaliatory evictions, a decision based solely on constitutional grounds was avoided.

The defense of retaliatory eviction does not appear to be very radical when considered in light of the range of limitations which the law places on property rights. As one commentator points out:

> Even though perpetual tenancies would not result, it is plain that prohibiting retaliatory eviction limits the landlord's freedom to deal with his property as he chooses. The same may be said of zoning regulations, building codes, health and safety laws, the sixty day wait to evict a tenant who is not in default, and many other rules. Completely unfettered property has probably always been a myth. So long as the invasion of the landlord's property rights is moderate, only carried to the extent reasonably necessary to give effect to the competing legitimate interests of tenants, there should be no doubt of its constitutionality. In this respect, a judge-made prohibition

against retaliatory eviction is no more an invasion of the landlord's interests than is a statute. [McElhaney, *Retaliatory Evictions: Landlords, Tenants and Law Reform,* 29 Maryland L. Rev. 193, 221 (1969).]

Once the viability of defenses under the First Amendment of the U.S. Constitution and under article I, section 3 of the Hawaii Constitution are established, the chief problem that the tenant must overcome is the requirement that the government be shown responsible in some relevant sense for the inhibition of his rights.[4] This requirement is popularly known as "state action."

The Supreme Court has long held that state court judgments, even in private lawsuits, can constitute the requisite state action. In the leading case of *Shelley* v. *Kraemer,* 334 U.S. 1 (1948), judicial enforcement of a private property agreement containing a racially restrictive covenant was found to be state action in violation of the Equal Protection Clause of the Fourteenth Amendment despite the fact that no statute was involved. Likewise in *Barrows* v. *Jackson,* 346 U.S. 249 (1953), where no statute was involved, the Court held that a state could not entertain a damage suit for violation of a racially restrictive covenant on the same rationale.

Other cases have dealt with infringement by state judicial processes of First Amendment rights. For purposes of the facts before us in this case, the most relevant decision is *New York Times Co.* v. *Sullivan,* 376 U.S. 254 (1964), where the Supreme Court held that a newspaper's First Amendment rights were abridged by a state court's award of a libel judgment against it. Although the suit was a private one, the Court found that the action

---

[4]The rights asserted by the tenant are included among the group of First Amendment rights made applicable to the states by the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

The same rights protected by article I, section 3 of the Hawaii Constitution are similarly made applicable to state action by article I, section 4, which reads in pertinent part:

No person shall be deprived of life, liberty or property without due process of law . . . .

of an Alabama court in finding the Times liable in damages for libeling a public figure was state action within the meaning of the Fourteenth Amendment:

> Although this is a civil lawsuit between private parties, the Alabama courts have applied a state rule of law which petitioners claim to impose invalid restrictions on their constitutional freedoms of speech and press. It matters not that that law has been applied in a civil action and that it is common law only, though supplemented by statute. See, *e.g.,* Alabama Code, Tit. 7, §§ 908-917. The test is not the form in which state power has been applied but, whatever the form, whether such power has in fact been exercised . . . ." [376 U.S. at 265.]

Applying the holding of *New York Times* to the facts in the present case, there can be no doubt that the state's role in permitting the use of its summary possession process by landlords as a retaliatory tool for the inhibition of tenant reporting and organizing is unconstitutional state action.

I would reverse.