126 N.J. Super. 114 (1973)
312 A.2d 888
JOHN POHLMAN, ANN POHLMAN, EDWARD NOIA, SANDRA NOIA, EDWARD RUDDY, LUCILLE RUDDY, ALBERT KOPAZ, GAIL KOPAZ, DOMINICK BRUNO, BELLA P. BRUNO, SHELDON ELLIOTT AND LOUIS MARSHELLO, PLAINTIFFS,
v.
METROPOLITAN TRAILER PARK, INCORPORATED, A CORPORATION OF THE STATE OF NEW JERSEY, AND JUNE A. DYER, I, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided October 26, 1973.
*116 Mr. Arthur J. Lesemann argued the cause for the plaintiffs (Messrs. Mazer and Lesemann, attorneys).
Mrs. Tonita S. Conaghan argued the cause for the defendants (Messrs. Porro, Conaghan and Murray, attorneys).
KOLE, J.S.C.
Defendant Metropolitan Trailer Park, Inc. is the owner and operator of a trailer park in Moonachie, New Jersey. Defendant June A. Dyer, I, is president of the corporation.
Plaintiffs in this action were mobile home owners who resided in the park until their evictions in late 1970. At issue here is plaintiffs' claim that their evictions were wrongful and warrant the award of compensatory and punitive damages under the Tenant's Reprisal Act, N.J.S.A. 2A:42-10.10 et seq. That Act provides as follows:
No landlord of premises or units to which this act is applicable shall serve a notice to quit upon any tenant or institute any action against a tenant to recover possession of premises, whether by summary dispossess proceedings, civil action for the possession of land, or otherwise:
*117 a. As a reprisal for the tenant's efforts to secure or enforce any rights under the lease or contract, or under the laws of the State of New Jersey or its governmental subdivisions, or of the United States; or

* * * * * * * *
c. As a reprisal for the tenant's being an organizer of, a member of, or involved in any activities of, any lawful organization; or

* * * * * * * *
A landlord shall be subject to a civil action by the tenant for damages and other appropriate relief, including injunctive and other equitable remedies, as may be determined by a court of competent jurisdiction in every case in which the landlord has violated the provisions of this section. [L. 1970, c. 210, § 1, eff. Sept. 30, 1970]
Based on the evidence at the final hearing, I make the findings of fact and law which follow.
Plaintiffs were active, to varying degrees, in the local election campaign in Moonachie in the fall of 1970. During this period the incumbent administration was considering amendment of the municipality's zoning ordinance  in particular, that zoning district in which Metropolitan Trailer Park is located. Without discussing the specific proposals, suffice it to say plaintiffs and defendants had different views as to how the area should be zoned.
This divergence of opinion led plaintiffs to support one mayoral candidate while defendant corporation and its principals supported his opponent. It was clear from the evidence, however, that at least insofar as relevant here, the support of the respective personal candidacies by plaintiffs and defendants was subordinate in importance and incidental to the zoning issue.
I find plaintiffs' evictions were a direct result of their active opposition to defendants on the zoning issue in the fall of 1970. More specifically, I find that the residents evicted were those who, in defendants' view, had clearly aligned themselves against defendants on the zoning issue and that this opposition was the proximate cause of the evictions.
I find, further, that the relationship of each plaintiff to the corporate defendant owner of the trailer park was *118 that of tenant and landlord under the Reprisal Act. Additionally, the exception as to "owner-occupied premises with not more than two rental units" (N.J.S.A. 2A:42-10.13) refers to the entire premises of which a part is rented. It does not refer to a particular rented dwelling unit. Here defendant-landlord, not plaintiffs, is in the position of owner-occupant. The "owner-occupied" premises is the trailer park as a whole. The exception is therefore inapplicable.
The judge who denied the preliminary injunction against the evictions in this case stated that under the Tenant's Reprisal Act the tenants would clearly have a cause of action if they had been evicted for some act that is "germane to the occupancy; and the complaint concerns a violation of some right of occupancy or use acquired by contract, lease or law; or that the organization or activity that involves complaints are actions against the landlord for some unlawful or undesirable act as a landlord."
While such cases are those most clearly within the statute, I find no reported case which limits the statute to matters of dispute between landlord and tenant that are directly involved with the tenant's occupancy. Indeed, there is unqualified language in at least one case which plainly supports the view that a "reprisal" may be found whenever the landlord has retaliated against a tenant for the tenant's exercise of a constitutionally protected right. See E & E Newman, Inc. v. Hallock, 116 N.J. Super. 220, 225 (App. Div. 1971).
There is no helpful legislative history on the Tenant's Reprisal Act. Logically, the primary concern of the Legislature was the protection of those tenants who report such matters as housing and health code violations, or band together in tenants' organizations to protest housing-related grievances collectively. See, for example, N.J. Landlord Tenant Relationship Study Commission, Interim Report, at 19, 20 (1970). Similarly, of course, recent case law involving the rights and obligations of the parties in a landlord-tenant *119 relationship focuses on occupancy-related issues such as inadequate services, unsafe conditions and increased rents. See, for example, Marini v. Ireland, 56 N.J. 130 (1970); Engler v. Capital Management Corp., 112 N.J. Super. 445, 448-449 (Ch. Div. 1970).
It does not necessarily follow, however, that the statute was intended to be limited in application to instances in which a tenant's conduct was directly related to problems of occupancy. To so limit the statute would be contrary to the liberal interpretation given it by the courts, in part resulting from "the beneficial purposes of the legislation in question and the desirable social results intended by the Legislature * * *." See Silberg v. Lipscomb, 117 N.J. Super. 491, 496 (Cty. Ct. 1971).
Conceding that the primary evil sought to be remedied by the Legislature in enacting N.J.S.A. 2A:42-10.10 was reprisal for the exercise of tenants' "housing" rights, it must still be recognized that the most significant elements in the statute are rights and reprisal. I find no reason why only certain rights should be protected under the statute when the Legislature has failed to clearly express such a limitation. Indeed, the Legislature has chosen to use broad language in several sections of the statute without any indication of an intended limitation thereon. See, for example, N.J.S.A. 2A:42-10.10(a) which prohibits reprisals for a tenant's "* * * efforts to secure or enforce any rights * * * under the laws of the State of New Jersey or its governmental subdivisions, or of the United States"; and 2A:42-10.10(c) prohibiting reprisals for "* * * the tenant's being an organizer of, a member of, or involved in any activities of, any lawful organization." (Emphasis added).
Accordingly, I find the Tenant's Reprisal Act applicable to the case at bar, involving as it does the tenants' exercise of their rights to petition their local government for certain zoning ordinance amendments which they reasonably considered affected their tenancy rights and to communicate *120 their feelings on this matter to their fellow residents similarly situated.
Assuming, arguendo, that the Reprisal Act applies only to retaliations for tenants' conduct which is "germane to the occupancy", the result would be the same, for in a very real sense plaintiffs' conduct in this case was germane to their occupancy.
As discussed above, plaintiffs' and defendants' support of the individual candidates for mayor in the fall of 1970 was, on the evidence here, primarily based upon and a function of their respective positions on the zoning issues.
This matter of zoning was not of mere political importance to the parties, nor were they merely interested therein as active citizens. Rather, both plaintiffs and defendants were concerned about the zoning ordinance only insofar as it affected the site of the trailer park. Plaintiffs were apparently seeking zoning protection against a sale of the tract by defendants for an industrial use. Defendants were attempting to block such rezoning to residential uses, in their view in order to prevent the eventual elimination of the trailer park caused by imposition of housing code or other requirements that mobile homes could not possibly meet. In addition, however, defendants had the unexpressed purpose of maintaining the present industrial zoning of the trailer park, thus preserving the site's value.
In essence, then, the controversy was one quite common in a landlord-tenant relationship. To the tenant-mobile home residents the issue was one of security; that is, obtaining such protection as was possible against the threat of defendants' unilateral termination of their occupancy.
The situation was thus not unlike an apartment house tenant's efforts to secure protection against precipitous termination of his tenancy. Indeed, the significance of such protection may be greater to the mobile home owner than to the apartment tenant in view of the former's substantial capital investment in his home, the cost of moving it, and the lack of available sites in the northern New Jersey area *121 for relocation  with respect to which there was ample credible testimony.
Similarly, defendants' position was typical of that frequently experienced by landlords of apartment or other rental premises. In seeking to better their position the residents threatened the economic welfare of the landlord-owner both in terms of current income and, more important, in terms of the value of defendants' capital investment. Defendants' reaction to such threat logically was to seek maintenance of the status quo.
Thus, the activities of plaintiffs with respect to the zoning issue had a direct relationship to their occupancy in the park, as they were attempting to secure municipal protection against the unilateral conduct of defendants.
Concededly, a tenant's complaint to the authorities about an existing violation of housing or health laws seems more closely related to the tenants' occupancy than, as here, the tenants' efforts to secure adoption of certain zoning changes. The difference, however, is largely illusory. Had these plaintiffs sought amendment of the housing or health codes then applicable to the park, for example, could it seriously be contended that they would not be entitled to the protection of the Reprisal Act? I think not.
In the present case the absence of zoning protection against a lucrative sale of the tract for industrial use was viewed by plaintiffs as a direct threat to their continued mobile home occupancy. Certainly lawful political activity in response to such a threat  whether real or imagined  is entitled to the same protection as activity designed to secure better housing conditions, rent-leveling protection, or other activities obviously "germane to the occupancy."
The result would be the same even if one assumes the Reprisal Act is inapplicable.
N.J.S.A. 2A:42-10.10 et seq. reveals the Legislature's concern for and intent to protect the rights of residential tenants who, as it has long been recognized, have an unequal bargaining position with the landlord.
*122 There was considerable evidence of the difficulties mobile homeowners encounter in finding a site for their homes. Thus, the fundamental problem of the apartment tenant and mobile homeowner is substantially the same  that is, the housing supply has not kept pace with demand, with the result that the lessor has a markedly superior bargaining position. The lessee's right to move to more suitable premises is simply of little value when such premises are not readily available.
The Legislature has recently recognized the mobile homeowner's position and his need for statutory protection against improper eviction and certain unconscionable conduct by lessors  i.e., by mobile park owners or operators. L. 1973, a. 153 (approved May 31, 1973). The Act expressly provides that it is necessary for the welfare of the State and its inhabitants and must be liberally construed to effect its purpose.
Assuming the Tenant's Reprisal Act is inapplicable, the question is whether the retaliatory action of defendants in this case is, nonetheless, wrongful as offensive to the State's public policy.
I conclude that the Mobile Home Owners Rights Act, even though not applicable to the instant case (since it became effective July 1, 1973), and the Tenant's Reprisal Act, N.J.S.A. 2A:42-10.10 et seq., reflect and merely declare the public policy of this State which pre-existed their enactment. See Engler v. Capital Management Corp., supra; E & E Newman, Inc. v. Hallock, supra. Cf. Shell Oil v. Marinello, 63 N.J. 402, 409 (1973); Berzito v. Gambino, 63 N.J. 460 (1973); Edwards v. Habib, 397 F.2d 687, 699-703 (D.C. Cir.1968), reh. den. (1968).
In view of the foregoing conclusions it is unnecessary to reach the merits of plaintiffs' claims based on the New Jersey Constitution. For discussions which may be relevant to some of the issues therein involved, see Independ. Dairy Workers, etc. v. Milk Drivers, etc., 23 N.J. 85 (1956) and 30 N.J. 173 (1959); Cooper v. Nutley Sun Printing Co., *123 36 N.J. 189 (1961). Similarly, there is no need to rule on plaintiffs' claim that their federal constitutional rights under the 1st, 5th and 14th Amendments have been violated. In any event, it is questionable whether that contention has merit, since there is no showing of governmental involvement in defendants' conduct. Cf. Lavoie v. Bigwood, 456 F.2d 7 (1 Cir.1972).
Plaintiffs are entitled to compensatory damages from defendants. No punitive damages are warranted under the facts of this case.