WINDWARD PARTNERS, a registered Hawaii partnership, Plaintiff-Appellee, *v*. SARAH DELOS SANTOS, HENRY OSHIRO, MACARIO ADVERSALO, KAZUYOSHI KAMIYAMA, KENNETH Y. KAMIYA, MR. AND MRS. THOMAS P. ADOLPHO, MR. AND MRS. SAMUEL KAKAZU, and EVERETT C. DAVIS, Defendants-Appellants

NO. 6305

APRIL 6, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

This is an appeal by defendants-appellants, Sarah Delos Santos, Henry Oshiro, Macario Adversalo, Kazuyoshi Kamiyama, Kenneth Y. Kamiya, Mr. and Mrs. Thomas P. Adolpho, Mr. and Mrs. Samuel Kakazu, and Everett C. Davis (hereinafter referred to as tenants), from a summary judgment order granting plaintiff-appellee, Windward Partners, a Hawaii partnership (appellee), possession of certain rented premises situated at Waikane, in the District of Koolaupoko, Oahu, Hawaii. The trial court held that the tenants' defense of retaliatory eviction was insufficient as a matter of law as a defense in a summary possession proceeding, and that there was no genuine issue as to any material fact on appellee's claim for possession.

We reverse the trial court's judgment and remand for further proceedings in accordance with this opinion.

ISSUES

I. Whether the trial court erred in concluding that retaliatory eviction is insufficient as a matter of law as a defense in a summary possession action.

II. Whether the trial court erred in finding that there was no genuine issue as to a material fact on the issue of the proper period for notice of termination of tenancy.

STATEMENT OF FACTS

The premises in dispute consists of eight parcels of primarily agricultural land situated in Waikane Valley and ranging in size from .172 acres to 15.5 acres. The premises were rented to the tenants by the prior owners of the land, Elizabeth Loy McCandless Marks, Elizabeth Marks Stack, Cynthia Marks Salley, and A. Lester Marks, Jr., tenants in common. Each of the tenants signed a "Short Term Tenancy Agreement" (agreement) with the prior owners. The agreements contained a description of the rented premises, the

tenure and term of the rental, certain covenants and agreements, and a "special clauses" section restricting the use of the premises. Although the agreements differed in certain respects, the covenants and agreements contained in each were essentially the same and each designated the tenancies as "month-to-month." The agreements signed by four of the eight tenants, tenants Delos Santos, Adolpho, Davis and Adversalo, restricted the use of the premises to "residential sites." The agreements signed by tenants Kamiyama, Oshiro, and Kamiya, restricted the use of the premises to "agricultural purposes" or "agricultural or horticultural uses only." The agreement signed by tenant Kakazu restricted the use of the premises to "agricultural purposes" and stated that "no more than one (1) single family dwelling . . . be maintained on said premises." The affidavits filed by the tenants show that four tenants, Delos Santos, Adolpho, Davis and Adversalo, qualify as residential tenants, whereas the remaining four, who are farming but not residing on the property, do not.

Appellee partnership was formed on June 25, 1975,[1] and consisted of twenty-nine to thirty partners. Joseph Rodrigues Pao was designated as executive managing partner, John Felix as managing partner, John Correa as partner-accountant and controller, Allen Hawkins as partner and house counsel, and Michael Scarfone as partner-project coordinator in construction. With the exception of these five members who constituted an "advisory committee" to the rest of the partnership, the other members were in the status of "investors" only. Although approval from the entire membership of partners was required for "major policy decisions", decisions not considered as such were made by Pao and Felix.

Some time in June or early July of 1975, appellee purchased 545 acres of land in Waikane Valley with the intent of

---

[1] Prior to June 25, 1975, Joseph Pao's discussions and negotiations for purchase of the Waikane Valley land were as the representative of Pao Investment Corporation.

eventually purchasing the entire valley and developing a residential community.[2] In order to implement the development plans, however, the land first had to be redesignated from "agricultural" to "urban", a process requiring an application to and approval from the State Land Use Commission (Commission). A petition was submitted to the Commission requesting redesignation of the Waikane Valley lands, and as required by law, the Commission held a public hearing on the petition prior to its final decision. The tenants, active members and supporters of the Waiahole-Waikane Community Association, publicly and vigorously opposed the redesignation and testified against the petition at the Commission's public hearing. The Commission denied the petition in December, 1974.

Subsequent to the Commission's decision to deny redesignation of the Waikane Valley lands, appellee gave written notice to the tenants, dated August 11, 1975, that their tenancies were terminated effective as of September 30, 1975. The recommendation to evict the tenants was made by Pao to appellee at a general meeting, and it was approved. Partners Pao and Felix gave final approval on the termination.

### STATEMENT OF THE CASE

The tenants refused to surrender possession of the premises, and appellee filed eight summary possession complaints in district court. The district court consolidated the eight summary possession complaints upon motion by the tenants and duly transferred the case to circuit court upon the tenants' demand for a jury trial. In answer to the consolidated complaints, the tenants (1) denied that proper notice of termination of tenancy was given by appellee, (2) asserted the defense that the possession proceedings were being initiated

---

[2] The deposition taken of Pao on March 4, 1976, indicates that Pao's idea for developing Waikane Valley into a residential community began some time in March, 1974. At that time, he began negotiating with Mrs. Marks (Elizabeth Loy McCandless Marks), 50% owner of the Valley, to purchase the land.

in retaliation for the tenants' opposition to the redesignation, (3) asserted the doctrine of emblements. The tenants counterclaimed for damages allegedly caused by appellee's summary possession actions, and by appellee's unfair and unlawful business practices. In an amended complaint, appellee added claims for rent, costs, attorney's fees, and damages to its original complaints, and prayed for writs of possession to issue against the tenants.

On November 18, 1975, appellee moved for summary judgment on its complaints for possession, alleging that the tenants were given notice of termination as was required by law and the terms of the tenancy agreement.[3] The trial court denied the motion when it determined that discovery proceedings were still being conducted, and that there was a dispute as to the proper notice period for termination of tenancy applicable in the case. The trial court also determined that the factual questions underlying the doctrine of emblements prevented the court from setting a date for an eviction order.

At a subsequent hearing on June 1, 1976, appellee orally renewed its motion for summary judgment and the court granted it. The summary judgment order stated in part, the following:

> The Court . . . having found that there is no genuine issue as to any material fact as to Plaintiff's claim for possession, and since retaliatory eviction is insufficient as a matter of law as a defense in a summary possession proceeding, Aluli v. Trusdell, 54 Haw. 417 (1973), the Plaintiff is entitled to summary judgment and the issuance of writs of possession as a matter of law. . . .

The order provided that the tenants were to be permitted to cultivate all growing crops planted on or before June 1, 1975, and to continue such cultivation until such crops were fully harvested. The order dismissed appellee's claims for rent, costs, attorney's fees, and damages and the tenants'

---

[3] The Short Term Tenancy Agreement specified that either party could terminate the tenancy upon 30 days notice.

counterclaim for damages without prejudice. Tenants moved for a stay of judgment pending an appeal, and the motion was granted.

OPINION

I.  WHETHER THE TRIAL COURT ERRED IN CONCLUDING THAT RE-TALIATORY EVICTION IS INSUFFICIENT AS A MATTER OF LAW AS A DEFENSE IN A SUMMARY POSSESSION ACTION.

The trial court's conclusion that retaliatory eviction was insufficient as a matter of law as a defense in a summary possession proceeding was premised on the holding in *Aluli v. Trusdell*, 54 Haw. 417, 508 P.2d 1217 (1973). We construe the word "insufficient" as used by the trial court to mean "invalid", and are of the opinion that *Aluli* is not apposite.

In *Aluli v. Trusdell, supra,* the tenant, on a month-to-month tenancy, appealed a district court ruling granting the landlord summary possession of an apartment. The appellant tenant therein contended that his First Amendment rights, made applicable to the states by the due process clause of the Fourteenth Amendment of the United States Constitution and by Article I, section 3 of the Hawaii Constitution, were violated by the appellee-landlord, because the landlord's summary possession proceedings were premised on appellant's action in encouraging his fellow tenants in forming a tenants' association. We held that the landlord's action did not violate appellant-tenant's First Amendment rights: in essence, we held that the defense of retaliatory eviction does not rise to a constitutionally protected right. In retrospect, however, we believe that the court, in *Aluli*, could have, on its motion, considered whether the facts of the case gave rise to a defense of retaliatory eviction, as stated in this opinion. In the event, however, that *Aluli* expressly or impliedly, forecloses the assertion, wherever appropriate, of an affirmative defense of retaliatory eviction, we modify or limit *Aluli* to that extent.

In the present case, tenants' defense of retaliatory eviction is based primarily on the contention that appellee's con-

duct was in retaliation for the tenants' exercise of the statutory right, pursuant to HRS § 205-4, to appear and present testimony before the Commission on an application for redesignation of land in Waikane Valley. In our opinion, the tenants' basis for asserting the defense of retaliatory eviction is distinct from that asserted by the tenant in the *Aluli* case, and warrants independent consideration.

Appellee argues that the tenants' defense of retaliatory eviction must fail because: (1) the tenants whose rented premises are restricted to use as residential sites, do not qualify under HRS § 521-74(a) of the Residential Landlord-Tenant Code to assert the retaliatory defense; and (2) on authority of *Aluli v. Trusdell, supra,* such a defense is not available to tenants whose rented premises are being used for commercial purposes only.

HRS § 521-74(a) provides in part:

[N]o action or proceeding to recover possession of the dwelling unit may be maintained against the tenant, nor shall the landlord otherwise cause the tenant to quit the dwelling unit involuntarily, nor demand an increase in rent from the tenant; nor decrease the services to which the tenant has been entitled, after:

(1) The tenant has complained in good faith to the department of health, landlord, building department, office of consumer protection, or any other governmental agency concerned with landlord-tenant disputes of conditions in or affecting his dwelling unit which constitutes a violation of a health law or regulation or of any provision of this chapter; or

(2) The department of health or other governmental agency has filed a notice or complaint of a violation of a health law or regulation or any provision of this chapter; or

(3) The tenant has in good faith requested repairs under section 521-63 or 521-64.

It is true that the conduct of the tenants herein does not fall within any of the enumerated subsections of HRS 521-74(a). But the Code does not purport to be the sole exclu-

sive expression of the rights and remedies available to land-
lords and tenants. Section 3(a) of chapter 521 states:

*Supplementary general principles of law, other laws, ap-
plicable.* (a) Unless displaced by the particular provisions
of this chapter, the principles of law and equity . . .
supplement its provisions.

This jurisdiction has recognized the validity of equitable
defenses in summary possession actions. *Island Holidays v.
Fitzgerald,* 58 Haw. 552, 574 P.2d 884 (1978). For similar
holdings in other jurisdictions, *see Bowles v. Blue Lake Devel-
opment Corporation,* 504 F.2d 1094 (5th Cir. 1974); *Cornell v.
Dimmick,* 73 Misc.2d 384, 342 N.Y.S.2d 275 (1973); *Markese
v. Cooper,* 70 Misc.2d 478, 333 N.Y.S.2d 63 (1972); *Portnoy v.
Hill,* 57 Misc.2d 1097, 294 N.Y.S.2d 278 (1968).

One such defense which has been recognized in other
jurisdictions relative to residential tenants and incorporated
into their common law is the doctrine of retaliatory eviction.[4]
*Dickhut v. Norton,* 45 Wis.2d 389, 173 N.W.2d 297 (1970);
*Schweiger v. Superior Court of Alameda County,* 3 Cal. 3d
507, 90 Cal. Rptr. 729, 476 P.2d 97 (1970); *Edwards v. Habib,*
U.S. App. D.C. 126, 397 F.2d 687 (1968), *cert. denied,* 393
U.S. 1016 (1969); *Portnoy v. Hill, supra.* This doctrine was
created by the courts to protect residential tenants from
eviction procedures used by landlords to retaliate against
tenants who reported building code violations and in other
ways acted to protect their rights. *Edwards v. Habib, supra,* 2
Powell, Real Property, ¶ 225[2][b].

In the leading case of *Edwards v. Habib, supra,* the Dis-
trict of Columbia appellate court recognized the doctrine as a
valid defense in an action for possession on the theory that to
permit landlords to intimidate tenants for the reporting of
sanitary code violations to the appropriate agencies would
frustrate the intent of Congress in enacting the housing and
sanitary codes. The legislative purpose behind the codes was
to secure safe and sanitary places for the city's residential

---

[4] *See* Statutory and Reporter's Notes to Sections 14.8 and 14.9 of Restatement
(Second) of Property (1977).

tenants to live. Since effective implementation and enforcement of the codes depended in part on the initiative of the public in reporting violations, much of the remedial effect of the codes would be lost if the court allowed the landlord to regain possession of the premises in this manner. In that case, the court held the D.C. statute permitting a landlord to terminate a month-to-month tenancy on 30 days notice, and the statute permitting a landlord to bring ejectment or summary proceedings against a holdover tenant[5] inapplicable where a retaliatory motive was proven.

Although most courts since the decision in *Edwards v. Habib, supra,* have been concerned with protecting the rights and duties of residential tenants to report housing and health code violations, *Parkin v. Fitzgerald,* 240 N.W.2d 828 (Minn. 1976); *Clore v. Fredman,* 59 Ill.2d 20, 319 N.E.2d 18 (1974); *Cornell v. Dimmick, supra; Markese v. Cooper, supra; Dickhut v. Norton, supra; Schweiger v. Superior Court of Alameda County, supra;* the doctrine has been applied in instances where the tenants have asserted legal rights unrelated to housing conditions. A case in point is *Pohlman v. Metropolitan Trailer Park, Inc.,* 126 N.J.Super. 114, 312 A.2d 888 (1973). In that case, plaintiffs mobile home owners sued the owners and operators of a trailer park to recover damages for wrongful eviction under the state's Tenants' Reprisal Act.[6] Plaintiffs had sought rezoning of the trailer park area from industrial use to residential use in an effort to protect them-

---

[5] The court said 130 U.S.App. D.C. at 140, 397 F.2d at 701-02:

> The notion that the effectiveness of remedial legislation will be inhibited if those reporting violations of it can legally be intimidated is so fundamental that a presumption against the legality of such intimidation can be inferred as inherent in the legislation even if it is not expressed in the statute itself. . . .

[6] The Tenants' Reprisal Act provided in part that no landlord could dispossess a tenant:

> (a) As reprisal for tenant's efforts to secure or enforce any rights under the lease or contract, or under the laws of the State of New Jersey or its governmental subdivisions, or of the United States or,
> . . . .
> (b) As a reprisal for the tenant's being an organizer of, a member of, or involved in any activities of any lawful organization. . . .

selves from defendants' sale of the property. The defendants attempted to block the rezoning in order to preserve the value of the site for future sale as well as to prevent imposition of housing code and other requirements which the mobile homes could not meet. The New Jersey court construed the Tenants' Reprisal Act to apply to the case even though the statute did not expressly refer to the tenants' activities as conduct protected under the statute. Recognizing that the primary evil sought to be remedied by the Act was reprisals by landlords against tenants' exercise of "housing" rights, nevertheless, the court said that the significant elements in the statute were "rights and reprisals". The court held that the Act was applicable to the tenants' exercise of their right to petition the local government for zoning ordinance amendments which they reasonably considered affected their tenancy rights. The court found that the controversy over zoning matters were quite common in disputes between residential tenants and landlords, and hence, the tenants' conduct was "germane" to the tenant-landlord relationship. The court further said that the result in the case would have been the same even if the Act was found to be inapplicable to the tenants' conduct since the legislative intent as evidenced by both the Act and another New Jersey statute enacted to protect mobile home owners was to protect residential tenants who had long been recognized as having unequal bargaining power with landlords.

In the case of *S.P. Growers Association v. Rodriguez*, 17 Cal.3d 719, 131 Cal. Rptr. 761, 552 P.2d 721 (1976), the California appellate court held that the defense of retaliatory eviction was available to defendants-tenants in an unlawful detainer proceeding brought by the plaintiff-landlord. The tenants were lemon pickers who were quartered in company owned housing. In the wake of a dispute between the plaintiffs and the defendants about a work related matter, the tenants filed a suit against the landlord charging a violation of the Federal Farm Labor Contractor Registration Act. The landlord immediately served eviction notices on the tenants. The court held that the defense of retaliatory eviction was a valid defense assertable by the defendants-tenants. The

court reasoned that if the landlord were permitted to evict the tenants in retaliation for the suit brought by the tenants under the federal statute, the enforcement of the federal act could be emasculated. The court said that the statutory public policy against violations of the federal statute must be protected.[7]

In *Robinson v. Diamond Housing Corporation*, 150 U.S. App. D.C. 17, 463 F.2d 853 (1972), a residential tenant appealed from a summary judgment in favor of the landlord in the landlord's possessory action. The tenant, who had successfully defended against the landlord in a prior possession proceeding, alleged that the landlord was bringing eviction proceedings in retaliation for the tenant's defense in the prior suit. The landlord argued that since he was unwilling to make repairs to the rental unit as required under the housing code, and since the unit could not be rented in its present condition, he should be permitted to withdraw the unit from the rental market. The court held that the defense of retaliatory eviction was available to the tenant in this situation just as it had been held to be a valid defense in *Edwards v. Habib, supra*. The court said that if the landlord's actions were motivated by a desire to punish the tenant for exercising her rights or to chill the exercise of similar rights by other tenants, then the possessory action was impermissible.

In the case before this court, the tenants exercised their statutory right to appear before the Commission at a public hearing and present testimony relevant to amendments to district boundaries as provided for in HRS § 205-4. At the time of the Commission's hearing in 1974 to redesignate the lands of Waikane Valley, HRS § 205-4 read as follows:

> After sixty days but within one hundred and twenty days of the original receipt of a petition, the commission shall advertise a public hearing to be held on the appropriate

---

[7] The court said at 17 Cal. 3d at 728, 131 Cal.Rptr. at 766, 552 P.2d at 726:

In a retaliatory eviction proceeding, the crucial question is not whether the statute is designed to aid tenants, but whether it depends for its effectiveness on private initiative and would thus be emasculated by allowing punitive eviction. . . .

island in accordance with the requirements of section 205-3. The commission shall notify the persons and agencies that may have an interest in the subject matter of the time and place of the hearing. . . .

It is clear that the legislative objective of providing for public notice and for a public hearing before the Land Use Commission was to encourage public participation in agency decision-making. The legislature expressly stated that "lessees" were among those of the public whose views were pertinent to proposed land use changes.[8] The tenants in this case are in a situation similar to that of lessees.

Recent amendments to chapter 205 reinforce such a conclusion. The 1975 amendment to HRS § 205-4 requires that the Commission conform to more stringent requirements in the area of notice to the public and the conduct of its public hearings.[9] The present version of HRS § 205-4(e)(3) expressly states that all persons "who have some property interest in the land, who lawfully reside on the land, or who otherwise can demonstrate that they will be so directly and immediately be affected by the proposed change that their interest in the proceeding is clearly distinguishable from that

---

[8] Prior to the 1975 amendments to HRS chapter 205, § 205-3 mandated that a public hearing be held and notice thereof published prior to final adoption of district boundaries within each county. Paragraph two of this section stated:

*At the hearing, interested owners, lessees, officials, agencies,* and *individuals may appear and be heard.* They shall further be allowed at least fifteen days following the final public hearing held in the county to file with the commission a written protest or other comments and recommendations. (Emphasis added.)

[9] *Amendments to district boundaries* . . . .

(b) [Conduct of the public hearing are to be in conformity with the provisions of the Hawaii Administrative Procedures Act relevant to "contested cases."]

(c) [N]otice of the hearing together with a copy of the petition shall be served . . . [on] all persons with a property interest in the land recorded at the department of taxation. In addition, such notice shall be mailed to all persons who have made a timely written request for advance notice of boundary amendment proceedings, and shall be published at least once in a newspaper in the county in which the land sought to be redistricted is situated as well as once in a newspaper of general circulation in the State at least *thirty* days in advance of the hearing. . . . [The notice must contain detailed information as required by HRS § 91-9.] (Emphasis added.)

. . . .

of the general public . . ." shall be permitted to intervene as parties, and that representatives of a citizen or community group who indicate a desire to express the views of the group shall be permitted to testify at the hearing.[10]

We are of the opinion that the legislative intent of providing public hearings prior to amending district land use boundaries would be frustrated if the appellee were permitted to retaliate against the tenants for opposing land use changes in a public forum. In this case, as in *Edwards v. Habib, supra,* the effectiveness of the statutes, HRS § 205-4, depends primarily on private initiative. Furthermore, as in *Pohlman v. Metropolitan Trailer Park, Inc., supra,* the tenants' conduct in exercising their right before the Commission was one which they reasonably considered affected their property interest as tenants. Thus, we are of the opinion that where a tenant asserts a statutory right, in the protection of his property interest as a tenant, and as a result the landlord seeks to dispossess the tenant through summary possession proceedings, the tenant can assert an affirmative defense of retaliatory eviction. Our willingness to so conclude is premised not only on safeguarding the effectiveness of the statutes involved, but substantially on the recognition of the salutary policy of protecting the property interests of the tenants from retaliating landlords.[11]

---

[10] *Amendments to district boundaries. . . .*

    (e) [A]gencies and persons may intervene in the proceedings in accordance with this subsection.

. . . .

(4) All other persons may apply to the commission for leave to intervene as parties. Leave to intervene shall be freely granted, . . . .

    (f) Together with other witnesses that the commission may desire to hear at the hearing, *it shall allow a representative of a citizen or a community group to testify who indicates a desire to express the view of such citizen or community group concerning the proposed boundary change.* (Emphasis added.)

[11] The legislative history of HRS § 521-74 indicates that when the predecessor provision was first enacted as Act 41 and designated as HRS § 666-34, the primary purpose was to encourage the repair of substandard housing conditions and to provide tenants with protection from evictions and rent increases by landlords for actions taken by tenants to remedy unsafe or unsanitary conditions. Standing Committee Report Number 485-70, House Bill 43. In 1972, when the legislature

The tenants' response to the motion for summary judgment created a genuine issue as to whether appellee's primary motive in terminating the tenancies was to retaliate for the opposition by the tenants to the proposed redesignation of the Waikane Valley lands. We hold that proof of these facts, by a preponderance of evidence, would support the affirmative defense of retaliatory eviction asserted by the tenants, and that the motion for summary judgment should have been denied. However, this does not mean that the tenants are entitled to remain in possession in perpetuity. Subsequent dissipation of the landlord's illegal purpose and the landlord's legitimate reasons for terminating tenancy is a factual question to be decided by the trier of fact.[12] *Edwards v. Habib,* *supra* 130 U.S.App. D.C. at 141, 397 F.2d at 702.

We find no reason to deny non-residential tenants the remedy of raising a defense of retaliatory eviction where, as in this instance, the statutory right being exercised pursuant to HRS § 205-4 is equally applicable to non-residential tenants and the exercise of that right by these tenants is likewise to protect their property interests in their tenancies.

We note that the Restatement (Second) of Property, section 14.8, confines the definition of retaliatory conduct to situations involving residential housing, and that the American Law Institute takes no position on whether or not the definition should be extended to commercial or industrial

---

enacted the Residential Landlord-Tenant Code, it removed the retaliatory provision from chapter 666 and enacted it as HRS § 521-74, amending the provision to include as protected conduct, complaints by tenants for other landlord-tenant disputes, in addition to health-related disputes.

[12] *See* comment *i* of section 14.8 of the Restatement (Second) of Property which states the following:

The primary motivation of the landlord in exercising his right may be retaliatory as of one particular time and not retaliatory at a later date. It is a question of fact each time the landlord acts whether that particular action is retaliatory. It is relevant evidence, but not conclusive, that the same action was found to be retaliatory at an earlier date. Factors relevant in determining whether a previous determination of retaliatory action has continued significance will be the length of time that has elapsed since the previous determination and whether the tenant has repeated the acts which previously caused the landlord to retaliate.

property.[13] The few appellate courts which have ruled on the question of permitting commercial tenants to raise the defense of retaliatory eviction have held that the issues raised by such tenants were collateral to the issue of the right to possession of the leased premises, and therefore, not a cognizable defense in summary possession proceedings. *Rossow Oil Co., Inc. v. Heiman,* 72 Wis.2d 696, 242 N.W.2d 176 (1976); *Mobil Oil Corporation v. Rubenfeld,* 48 A.D.2d 428, 370 N.Y.S.2d 943 (1975); *Clark Oil & Refining Corporation v. Leistikow,* 69 Wis.2d 226, 230 N.W.2d 736 (1975); *Clark Oil & Refining Corporation v. Thomas,* 25 Ill. App.3d 428, 323 N.E.2d 479 (1974). *Cf. William C. Cornitius, Inc. v. Wheeler,* 276 Or. 747, 556 P.2d 666 (1976), where the court refused to extend the defense of retaliatory eviction to a commercial setting, and recognized that the defendant-tenant had available other remedies for damages against the plaintiff-landlord for the plaintiff-landlord's violation of anti-trust laws and regulations of the Federal Energy Administration.

However, in our opinion, wherein as we have in this case applied a two-prong test, and both residential and non-residential tenants fulfill both of the tests, we perceive no justifiable legal premises to distinguish between the two classes of tenants. We, therefore, conclude that the affirmative defense of retaliatory eviction is available to both types of tenants, and the trial court erred in its conclusion of law.

II.   WHETHER THE TRIAL COURT ERRED IN FINDING THAT THERE WAS NO GENUINE ISSUE AS TO A MATERIAL FACT ON THE ISSUE OF THE PROPER PERIOD FOR NOTICE OF TERMINATION OF TENANCY.

We have held that the trial court erred in concluding that, as a matter of law, the defense of retaliatory eviction is not available to the tenants.

---

[13] See n. 4, *supra.* The Restatement (Second) of Property § 14.8 confines the definition of retaliatory conduct to situations involving residential housing. The Restatement states:

The Institute takes no position at this time as to whether or not the definition of retaliatory action for the purposes of § 14.9 should be extended to . . . commercial or industrial property.

In addition, a genuine issue as to a material fact exists in regards to the proper period for notice of termination of tenancy of the residential tenants herein.

HRS § 521-71 provides the following:

> Termination of tenancy; landlord's remedies for hold-over tenants. (a) When the tenancy is month to month, the landlord or the tenant may terminate the rental agreement upon his notifying the other at least *twenty-eight days* in advance of the anticipated termination *or in cases of voluntary demolition of the dwelling units, ninety days in advance of the anticipated demolition.* . . . (Emphasis added.)

We find, taking the pleadings, depositions, interrogatories, and admissions on file, together with the affidavits, Rule 56(c), H.R.C.P., *Technicolor v. Traeger,* 57 Haw. 113, 551 P.2d 163 (1976); *Gum v. Nakamura,* 57 Haw. 39, 549 P.2d 471 (1976), and drawing inferences from the underlying facts contained in the materials in the light most favorable to the tenants, *Gum v. Nakamura, supra* at 42-43, 549 P.2d at 471, that there existed a material fact in genuine issue on a procedural question, to wit: whether or not appellee intended to demolish the dwelling units.

Case is remanded for further proceeding in accordance with this opinion.

*C. Michael Hare* for defendants-appellants.

*Allen R. Hawkins* for plaintiff-appellee.