Ray CAMERON, Appellant,

v.

CALHOUN–SMITH DISTRIBUTING COMPANY, Appellee.

No. 11680.

Court of Civil Appeals of Texas.

Austin.

June 18, 1969.

Joseph B. Dibrell, Seguin, for appellant.

Jack F. Cook, Jr., Austin, for appellee.

HUGHES, Justice.

This is a suit for rents allegedly due under a five year lease contract entered into by Calhoun-Smith Distributing Company, Lessor and Ray Cameron, Lessee. A nonjury trial resulted in judgment for Lessor, Appellee, for the amounts sued for including a sum for reasonable attorney's fees as provided for in the lease.

The first point made by Lessee, Appellant, is that the uncontradicted evidence shows that the premises became untenantable for cafe purposes, this being the purpose for which the premises were leased, because of faulty sewage and drainage facilities which Lessor failed to correct, forcing abandonment of the premises.

The evidence is undisputed that the leased premises became unusable for cafe purposes because of faulty drainage resulting in sewage backing up in the cafe during rainy weather.

The lease provides that Lessee agreed to "accept possession of the demised premises in their present condition * * *" and that "in taking this lease, he is governed by his own inspection of the premises and his own judgment of their desirability for its purposes * * *"

The cafe building was constructed under an agreement between the parties the appellee would furnish the land and $3,500.00 for its construction and appellant would pay any additional amound required. This was done. Later it was agreed that appellee would put up an additional $1,500.00 to build a kitchen. This was done. The rents provided for in the leases were based on these expenditures. It seems that neither party supervised the construction of the improvements.

The general rule is that there is no implied warranty on the part of the landlord that the premises are fit for the purpose for which they are leased. 35 Tex.Jur.2d, Landlord and Tenant, Sec. 50. This rule, coupled with the lease provisions which we have quoted, requires us to overrule appellant's first point, which we do.

Appellant's second point is that since appellee failed to make a reasonable effort to lease the premises after being vacated that he should not recover.

The lease provided that in the event it was cancelled by Lessor for breach of any of its provisions that Lessee should remain liable for the stipulated rents less "* * * the rent which Lessor, after reasonable effort, shall be able to obtain upon a reletting of the premises."

M. Ford Smith, President of Appellee Corporation, testified:

"Q Now, during this time, there was about a year that the place was vacant. Is it not true that Mr. Cameron made every effort to get new tenants in the building?

A I had talked to a couple of tenants he had sent by which—

Q Did you not refuse to see quite a few of the tenants he sent to your?

A I do not believe I refused to see any tenant he sent by.

Q Did you make any effort, at all, to sublease the premises during that period of time of the vacancy?

A I talked to a couple of people who were interested in renting the building. Seems like there was a lady out in Oak Hill that contacted me one time. I had numerous calls on the building, which, each time, I referred them to Mrs. Cameron because as far as I was concerned, they were still leasing the building."

The lease expired by its terms May 31, 1968. In December 1967, appellee leased the premises to Mr. Pack for $100.00 per month, however, appellee collected only $300.00 from Mr. Pack prior to May 31st although Mr. Pack occupied the premises until and after the expiration of the lease in suit. Mr. Pack was procured as a tenant by appellant.

The wife of appellant testified:

"Q About a month and a half, and after Mr. Cain terminated his sublease agreement, did you all continue to try to get other people to sublease the premises?

A Yes, sir, we sure did.

Q And did you get full cooperation with Mr. Smith, Ford Smith?

A No, sir, we never could get him. We could get the parties to go down there, but he would not talk to them. He was always out of town, they would claim, at the time.

Q How many people would you say you sent to see him to get his permission to sublease the premises?

A I would say at least ten, or more."

We believe the evidence is insufficient to show, as a matter of law, that appellee failed to make a reasonable effort to relet the premises. It seems to us that appellant undertook this burden himself and that appellee did not hinder him in his efforts. Point two is overruled.

Point three is that the trial court erred in not allowing appellant credit for the value of the improvements which he placed upon the property since appellant and appellee were engaged in a joint venture.

The evidence is that appellee agreed to furnish the site and $3,500.00 to build a cafe and that appellant would furnish all the money over $3,500.00 required to build it, the cafe when built to be leased to appellant for $100.00 per month for five years. Subsequently, appellee advanced an additional $1,500.00 to build a kitchen and the rent was hiked $30.00 per month. There was no agreement that appellant was to be reimbursed for any money spent by him on the building. The parties were not joint adventurers. There was no agreement to share in profits and losses. Roddy, Inc. v. Carlisle, 391 S.W.2d 765, Tex.Civ.App. Fort Worth, writ ref. n.r.e. (1965). Point three is overruled.

The last point is that appellee gave credit for $300.00 rent received from Mr. Pack, whereas he should have given credit for all the rent Pack agreed to pay for the six months he occupied the premises prior to expiration of the lease whether collected or uncollected. We sustain this point.

It seems to us that appellee should have collected the rent from Mr. Pack or evicted him. Appellant had no chance to rent the property as long as it was occupied by a tenant of appellee. Also, it is shown that Mr. Pack occupied the premises after the expiration of the lease to appellant and there is no showing that the claim for rent accrued and not paid prior to the expiration of the lease is valueless or uncollectible. We reform the judgment by reducng it $300.00. As reformed, we affirm the judgment of the trial court.

The costs of appeal are assessed one half to each party.

Reformed, and as reformed, affirmed.