James Lee WALTON and Carolyn Walton

v.

**DARBY TOWN HOUSES, INC.**
**d/b/a Darby Town Houses**
**Associates, et al.**

**Civ. A. No. 75–60.**

United States District Court,
E. D. Pennsylvania.

May 30, 1975.

Dean A. Nance, Delaware County Legal Assistance, Chester, Pa., for plaintiffs.

Max W. Gibbs, Upper Darby, Pa., for defendants.

## OPINION

BECHTLE, District Judge.

This action was commenced by the plaintiffs to enjoin their eviction from a federally subsidized housing development known as the Darby Town Houses.[1]

---

1. While the plaintiffs initially instituted this matter as a class action on behalf of themselves and all other tenants residing in the Darby Town Houses development in Darby, Pa., the class action aspects of the case have been withdrawn by plaintiffs. *See* Memorandum of Law in Support of Plaintiffs' Proposed Findings of Fact and Conclusions of Law.

Summary eviction proceedings were instituted against the plaintiffs pursuant to the filing of a Landlord-Tenant Complaint in the office of Archie G. Piotti, District Justice of the Peace in Darby Township. Plaintiffs were served with the Landlord-Tenant Complaint on January 2, 1975, and on January 9, 1975, plaintiffs moved the Court for an Order temporarily restraining the state court eviction proceedings. We granted the motion for a temporary restraining order and, in accordance with Fed.R.Civ.P. 65(b), scheduled a hearing on plaintiffs' motion for a preliminary injunction. The following findings of fact and conclusions of law are based upon the evidence presented at the hearing on the motion for a preliminary injunction.[2]

*Findings of Fact*

1. Plaintiffs James Lee Walton and Carolyn Walton currently reside at 1549 Noblet Avenue, Darby Township, Pennsylvania, in the Darby Town Houses development. Plaintiffs have occupied the dwelling located at 1549 Noblet Avenue since August 31, 1974.

2. The Darby Town Houses development is owned and operated by the defendant Darby Town Houses Associates, a limited partnership maintaining offices at 134 North Narberth Avenue, Narberth, Pennsylvania. The housing development, consisting of 172 individual units, was built and is subsidized pursuant to Section 236 of the National Housing Act, 12 U.S.C. § 1715z–1.

3. Defendant Joseph Singer is a limited partner of defendant Darby Town Houses Associates. The managing partner of Darby Town Houses is Edward Rosner, also a defendant herein. Archie G. Piotti is a District Justice of the Peace for District 2–5 in Delaware County, Pennsylvania. Defendant Piotti maintains his office at 1050 Ashland Avenue, Darby Township, Pennsylvania.

4. Plaintiff James Lee Walton became the resident manager of the Darby Town Houses development on or about August 31, 1974. Walton's position as resident manager was based on an oral contract of employment with Edward Rosner entered into sometime immediately prior to August 31, 1974. In consideration for his services as resident manager, Walton received a salary of $106 per week and the use and occupancy of the premises located at 1549 Noblet Avenue. Darby Town Houses Associates, through its managing partner Edward Rosner, further agreed to pay the rent and all utilities for the dwelling occupied by the Waltons.

5. On October 30, 1974, Walton signed a lease for the above-described premises. The lease, dated October 1, 1974, was prepared and signed by Edward Rosner and/or one of his employees. The document signed by Walton and Rosner was titled "Model Form of Lease" and referred to Darby Town Houses Associates as "Landlord" and "Mr. and Mrs. Jimmie Lee Walton" as "Tenant."

6. Certain terms and provisions of the lease were not made applicable to the plaintiff. Primarily, plaintiff was not required to pay a monthly rental charge. In addition, plaintiff was not required to deposit one month's rent as security for property damage; he did not have to certify his income in order to establish the monthly rental payments and the amount of federal subsidy; and finally, the size of plaintiff's family did not qualify him for the three bedroom unit provided for him by Darby Town Houses (the Waltons have two children).

7. As resident manager of the Darby Town Houses, Walton's duties consisted of making minor structural repairs, contracting with outside parties to have electrical and plumbing work performed, and responding to tenants' general complaints.

2. Prior to the commencement of the preliminary injunction hearing, the trial of the action was consolidated with the hearing, thereby rendering further testimony unnecessary.

8. Within a relatively short time after the commencement of his employment as resident manager, Walton had a disagreement and confrontation with defendant Rosner, the managing partner of Darby Town Houses Associates. The cause of the disagreement between Walton and Rosner was the former's belief that the owners of Darby Town Houses were not taking sufficient action to alleviate alleged defective and substandard living conditions in the federally subsidized housing development.

9. By virtue of his position as resident manager, Walton became familiar with the complaints of tenants of Darby Town Houses concerning the defective conditions which existed throughout the development. Walton brought to the attention of Rosner and Singer what he considered to be the justified complaints of the tenants but felt that neither individual intended to take any action with respect to the complaints.

10. The employer-employee relationship between Rosner and Walton quickly deteriorated. Walton believed that the owners of the development were not responding with sufficient promptness and resources to the complaints of the tenants. Rosner, on the other hand, felt that Walton had failed to perform the duties required of him as resident manager of the development. Walton was accused by Rosner of failing to make those repairs and alterations within the realm of his employment responsibilities and of submitting false invoices for services and materials.

11. In late October or early November, 1974, Walton began encouraging tenants to form a tenants' organization in order to effectively pressure the owners to respond to the complaints of the tenants.

12. On November 6, 1974, the Darby Township Commissioners held their regularly scheduled public meeting at Studevan Elementary School in Darby Township. Walton and approximately 15 tenants of Darby Town Houses development attended the Commissioners'

meeting and addressed the Commissioners with respect to the conditions existing in the housing development. At the conclusion of the meeting, the Commissioners promised to have the Township inspectors and engineer inspect the development as soon as possible. The promised inspection of the Darby Town Houses by the Township engineer and inspectors took place on Friday, November 8, 1974. Both Walton and Rosner were present during the aforementioned inspection.

13. During the first week of November, 1974, Walton contacted the Housing Management Division of the Housing and Urban Development ("HUD") agency in the Philadelphia area in reference to the conditions at the Darby Town Houses development. Prior to November 12, 1974, Walton met with Messrs. Tower and McKnight in the HUD office in Philadelphia. The purpose of the meeting was to seek HUD's assistance in correcting the conditions at the development.

14. Under date of November 12, 1974, Rosner sent a letter to Walton, advising him that as of November 23 his employment with Darby Town Houses Associates was terminated and that he was to vacate the premises at 1549 Noblet Avenue as of December 10, 1974. Sufficient reason existed for Walton's employment relationship to be terminated.

15. Subsequent to November 12, 1974, Walton continued to encourage tenants to form a tenants' organization. Several meetings of tenants were held in Walton's home. In order to publicize the complaints of the Darby Town Houses tenants, Walton contacted local newspapers concerning housing conditions at the development. Rosner was aware of the fact that Walton had contacted the news media in order to publicize the complaints of the tenants.

16. While Walton's employment as resident manager was terminated as of November 23, 1974, he was directed to vacate the premises on or before Decem-

ber 10, 1974. The notice to vacate the premises was dated November 12, 1974, thus providing Walton approximately 30 days in which to vacate the dwelling at 1549 Noblet Avenue. Walton refused to surrender possession of the premises after December 10, 1974, and continues to occupy said premises.

17. On December 23, 1974, Harry Monoper, an employee of Darby Town Houses Associates, filed a Landlord-Tenant Complaint against James Lee Walton pursuant to the instructions of Rosner. The complaint was filed in the office of Archie G. Piotti, District Justice of the Peace in Darby Township. Plaintiff was served with the above-described Landlord-Tenant Complaint on January 2, 1975.

18. An individual named Matt Hall was the resident manager of the housing development prior to the hiring of Walton. Although Hall's employment as resident manager was terminated by Rosner, Hall was permitted to reside in the development following the termination of his employment.

19. Walton and his family resided at 1549 Noblet Avenue in the Darby Town Houses development for two months before a written lease was prepared and executed by the parties involved in this action. It was not necessary for Walton to follow the normal tenant application procedures. At the time he was hired as resident manager, Walton was given a three-bedroom unit in the development despite the fact that there existed a considerable waiting list of people desirous of living in the Darby Town Houses.

20. Walton and his family began occupying the subject dwelling simultaneously with the inception of his duties as resident manager.

21. The letter dated November 12, 1974, sent by Rosner to Walton informed the latter that his employment as resident manager would be terminated as of November 23 and that he was to vacate the premises by December 10, 1974.

22. On November 22, 1974, Walton and approximately 15 to 20 tenants of the Darby Town Houses attended a second meeting of the Darby Township Commissioners which was held at Darby Township Junior-Senior High School. At this meeting, Walton once again addressed the Darby Township Commissioners regarding the conditions existing in Darby Town Houses development. At the close of the meeting, the Commissioners once again assured Walton and the tenants that they would do their best to try to correct those conditions about which the tenants were complaining.

23. On November 24, 1974, the tenants of Darby Town Houses held a meeting at the Darby Township Fire House on Hope Road. Individual tenant complaint forms which had been prepared by Walton prior to this meeting were distributed to all the tenants in attendance. Within the next week over 90 forms were returned to Walton by the various tenants of Darby Town Houses.

24. Edward Rosner had three conversations with Carolyn Walton concerning James Walton's involvement in the tenant organization and the making of complaints concerning the conditions at the development. The first conversation took place on November 29, 1974, at which time Rosner offered to let the Waltons remain as tenants if James Walton would apologize to HUD officials and the Darby Township Commissioners. During the November 29 conversation, Rosner also stated to Carolyn Walton that as long as her husband was determined to make "trouble" Rosner would have no choice but to evict him. The substance of this conversation was confirmed by letter dated November 29, 1974. Rosner held a second conversation with Carolyn Walton on December 3, 1974. With a blank tenant complaint form in his possession, Rosner questioned Carolyn Walton about the tenant complaint forms distributed by her husband. Rosner and Carolyn Walton had a third conversation on December 6, 1974. During this third conversation, Rosner warned Carolyn Walton that if her husband did not terminate his tenant organizing activities the Waltons were going

to be evicted from the Darby Town Houses development.

25. On December 5, 1974, Dean Nance, Esquire, an attorney in the office of Delaware County Legal Assistance Association, Inc., sent a letter to Mr. Rosner informing the latter that the termination of the Walton's lease would violate Pennsylvania law and the Fifth Amendment to the United States Constitution. Following receipt of this letter, Rosner contacted Nance by telephone on December 10, 1974. During the telephone conversation of December 10, Rosner informed Mr. Nance that Walton could continue to live in Darby Town Houses if he stopped being a "rabble-rouser."

26. Edward Rosner caused a Landlord-Tenant Complaint to be filed against James Lee Walton in retaliation for Walton's continued efforts to organize a tenants' organization for his continued complaints about the conditions in the development to the Township Commissioners, for his complaints about the conditions in the development to HUD officials, and for distribution and collection of tenant complaint forms.

## Conclusions of Law

1. The Court has jurisdiction over this matter under 28 U.S.C. § 1343(3) and (4).

2. The prerequisite of an action under color of state law set forth in 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983, and the requirement of state action under the Fourteenth Amendment have been met in this case.

3. As of October 3, 1974, plaintiffs were tenants of Darby Town Houses Associates pursuant to a written lease.

4. The defendants are legally bound by the terms of said lease.

5. Plaintiffs James Lee and Carolyn Walton are entitled to all protections afforded to any other tenant under the law.

6. There are no HUD regulations or guidelines which require the eviction of a resident manager following the termination of his employment.

7. The actions of James Lee Walton in associating with other tenants and petitioning for redress of grievances are actions protected by the First Amendment to the United States Constitution.

8. The defendant's eviction of James Lee Walton and Carolyn Walton was motivated by the landlord's intention to retaliate against Walton for his exercise of First Amendment protected activities.

9. The defendants, by engaging in a retaliatory eviction, have violated the plaintiffs' rights secured by the First and Fourteenth Amendments.

## Discussion

As outlined above, plaintiffs brought this § 1983 action to enjoin their eviction from the Darby Town Houses development. The basis of the motion for injunctive relief is the plaintiffs' claim that eviction proceedings were instituted by the defendants in retaliation for Walton's leadership role in the formation of a tenants' organization and for his complaints to the Darby Township Commissioners, the Housing Management Division of HUD, and the local media concerning the alleged substandard housing conditions existing in the development. Defendants contend that the Landlord-Tenant Complaint was filed and summary eviction proceedings instituted not in retaliation for Walton's organization activities but because the plaintiffs refused to vacate the premises to which they were no longer entitled in that Walton's employment as resident manager had been terminated as of November 23, 1974. The essence of defendants' argument is that the Waltons were permitted to occupy the premises at 1549 Noblet Avenue as an incident of Walton's employment and that once the employment relationship was terminated the plaintiffs no longer had any right to possession of the premises.

The plaintiffs do not contest the termination of Walton's employment as res-

**558**

ident manager of the Darby Town Houses development.[3] Rather, plaintiffs claim that by virtue of the written lease executed by Walton and Rosner on October 30, 1974, they had an independent right of possession as a tenant separate and distinct from their right to occupancy pursuant to the oral contract of employment.

The crucial factual question presented for this Court's determination is whether Walton and his family were tenants of Darby Town Houses pursuant to the lease or whether their occupancy of the premises was a mere incident to Walton's employment as resident manager. Resolution of the above-stated factual issue is essential to the proper disposition of this case, for if plaintiffs had no right to possession of the dwelling other than that which emanated from Walton's contract of employment, the termination of the employment relationship would effectively extinguish plaintiffs' right to occupancy of the dwelling. However, if the plaintiffs had an independent right to possession as a tenant, they could not be constitutionally evicted in retaliation for the exercise of freedoms guaranteed by the First Amendment. Mattingly v. Elias, 482 F.2d 526 (3d Cir. 1973); Edwards v. Habib, 130 U.S.App.D.C. 126, 397 F.2d 687 (1968). The Court concludes that by virtue of the leasehold agreement entered into by the parties to this action the plaintiffs became tenants of Darby Town Houses with the distinct right to possession of the premises independent of the oral contract of employment.

It must be noted at the outset that the question of whether the Waltons were in fact "tenants" of the housing development is a very close one. If it were not for the execution of the lease, the Court would have no difficulty in finding that the plaintiffs occupied the premises in question as a mere incident of Walton's employment as resident manager. How-

ever, as of October 30, 1974, the date the lease was signed by Walton and an authorized representative of the owners, the plaintiffs became bound by the covenants and entitled to the rights contained therein, except for the obligation to pay rent and utilities, which obligation was assumed by Darby Town Houses Associates in return for Walton's services as resident manager of the development.[4]

The written lease did not alter in any way Walton's oral contract of employment as resident manager. The effect of the execution of such lease was to create a right of tenancy co-extensive with but not dependent upon the oral employment contract. This conclusion is buttressed by the fact that the lease in question expressly provided for a rental term of month-to-month with the requirement of 30-day notice of termination imposed upon landlord and tenant. There is no evidence in the record that Walton was informed either at the commencement of his employment or when the lease was signed that upon termination of his employment the premises would have to be immediately vacated.

The fact that the plaintiffs were not required to pay rent and utilities does not preclude a finding that a tenancy was created under the lease. In Pennsylvania, "a tenancy may be created, and exist, when the agreement of lease is that no rent shall be demanded or paid." Mitchell v. Commonwealth of Pa., 37 Pa. 187, 193 (1860). The only substantive difference between the tenancy of the plaintiffs and that of the other tenants in the development was that plaintiffs were not required to pay rent and utilities.

Note must also be taken of the fact that the defendants did not initiate eviction proceedings upon the termination of Walton's employment. Instead, plaintiffs were notified that they had 30 days

3. *See* Plaintiffs' Memorandum of Law in Support of Their Motion for a Temporary Restraining Order.

4. Although the lease was signed on October 30, 1974, the effective date of the leasehold agreement was October 1, 1974.

to vacate the premises in the same letter that informed them that Walton's services as resident manager would no longer be required. The Court believes that, if the owners of the development considered plaintiffs' occupancy to be an incident of Walton's employment, eviction proceedings would have been begun immediately upon termination of the employment contract.

As the plaintiffs aptly point out, further evidence of defendant's acknowledgment of the existence of a lease and the status of the plaintiffs as tenants is found in the method by which the defendants chose to obtain possession of the premises. On December 23, 1974, Rosner caused to be filed in the office of the District Justice of the Peace a Landlord-Tenant Complaint against James Lee Walton. The complaint clearly refers to Rosner as the Landlord and Walton as the Tenant.

The record also contained evidence that the resident manager of the Darby Town Houses prior to Walton was not evicted from the development when he was relieved of his duties as resident manager. Rosner testified that although he fired one Matt Hall from his job as resident manager the above individual was permitted to continue his residence in the subject housing development.

In summary, the Court concludes that the Waltons were tenants of Darby Town Houses pursuant to the written lease executed as of October 30, 1974. As such, the plaintiffs may not be evicted in retaliation for the exercise of First Amendment rights.

The law is now clear that a retaliatory eviction of a tenant under color of state law is actionable under 42 U.S.C. § 1983. Mattingly v. Elias, *supra;* Lavoie v. Bigwood, 457 F.2d 7 (1st Cir. 1972). The Court is satisfied that the requisite "state action" is present in that defendants are utilizing the state courts to effectuate the eviction of a tenant from a federally subsidized housing development built and operated pursuant to federal housing laws. Joy v. Daniels, 479 F.2d 1236 (4th Cir. 1973).

As far as the question of retaliatory eviction is concerned, the evidence amply demonstrated that defendants initiated the summary eviction procedures in retaliation for Walton's tenant organizing activities and complaints to local and federal authorities regarding the substandard conditions existing in the development. While plaintiffs first received notice to vacate the premises on November 12, 1974, formal summary eviction procedures were not initiated until December 23, 1974, when Rosner caused to be filed the Landlord-Tenant Complaint in the office of the District Justice of the Peace. The Court's finding that eviction proceedings were instituted in retaliation for Walton's activism is, therefore, based primarily on conduct and statements made by Rosner between the time the initial notice to vacate was sent and the filing of the Landlord-Tenant Complaint.

Dean Nance, Esquire, an attorney in the Delaware County Legal Assistance Association, testified concerning a telephone conversation he had with Rosner on December 10, 1974. On direct examination, Nance, whose testimony we credited, testified that Rosner stated during the course of the telephone conversation that Walton could continue to live in the development if he stopped being a "rabble-rouser." According to Nance, Rosner also stated in the conversation that Walton should discontinue the practice of encouraging other tenants to complain and distributing and collecting the tenant complaint forms.

As outlined in the Findings of Fact, Rosner's statements to Carolyn Walton on the dates of November 29, December 3 and 6, 1974, affirmatively show that the attempted eviction was motivated by the landlord's desire to retaliate against Walton for the exercise of rights protected by the First Amendment. The clear import of the statements and warnings made by Rosner was that the plaintiffs would be permitted to remain

as tenants if Walton ceased his organizational activities and, conversely, that they would be evicted if Walton continued to complain to local and federal officials regarding conditions in the housing development. After analyzing the testimony and the exhibits introduced, the Court has no hesitancy in concluding that eviction procedures were initiated in retaliation for Walton's refusal to terminate his tenant organizing activities.

ORDER

And now, to wit, this 30th day of May, 1975, it is ordered as follows:

1. Plaintiffs' motion for a permanent injunction restraining their eviction from the premises located at 1549 Noblet Avenue in the Darby Town Houses development is *granted*.

2. The plaintiffs are hereafter *directed* to fully comply with each and every provision set forth in the leasehold agreement signed by the parties to this action, including the payment of all rentals due and owing and the posting of a security deposit in the sum normally and ordinarily required by the owners of the Darby Town Houses.