Thresia JOHNSON, Appellant,

v.

HIGHLAND HILLS DRIVE APARTMENTS, Appellee.

No. 19040.

Court of Civil Appeals of Texas, Dallas.

March 24, 1977.

Rehearing Denied April 21, 1977.

Michael M. Daniel, Dallas Legal Services Foundation, Inc., Dallas, for appellant.

Steven Wm. Buholz, Dallas, for appellee.

AKIN, Justice.

This is an appeal by Thresia Johnson, plaintiff, from a summary judgment granted in favor of Highland Hills Drive Apartments, defendant, by the county court at law. Plaintiff sued for damages allegedly resulting from defendant's wrongful termination of her lease and its breach of duty to provide facilities for mail delivery. Defendant's motion for summary judgment was supported by a copy of the written lease between plaintiff and defendant and by a judgment rendered by a county court at law in its favor and against plaintiff in a forcible entry and detainer action. Plaintiff contends that the summary judgment was improper because the forcible entry and detainer judgment cannot constitute an estoppel by judgment of this suit for damages and because defendant failed to show, as a matter of law, that it had no duty to provide mail delivery facilities. Although we hold that the defendant had no implied duty to provide mail delivery facilities, we reverse and remand for trial with respect to the alleged wrongful eviction because we hold that this action is not barred by the adverse forcible entry and detainer judgment.

■ Defendant asserts that the judgment of possession in the forcible detainer action acts as an estoppel by judgment on the issue of whether the plaintiff was wrongfully evicted from the premises. We cannot agree. Texas Revised Civil Statutes Annotated art. 3994 (Vernon 1966) provides:

> The proceedings under a forcible entry, or forcible detainer, *shall not bar* an action for trespass, *damages,* waste, rent or mesne profits. [emphasis added]

As we read this language, the legislative intent is clear that an action for damages is not barred by a judgment of possession in a forcible detainer action. Although we have found no case directly in point, the supreme court in *House v. Reavis,* 89 Tex. 626, 35 S.W. 1063, 1066–67 (1896) held, in construing this statute, that the word "trespass" included trespass to try title and, therefore, a judgment of possession was not a bar to a trespass to try title suit. The court reasoned that if the term "trespass" had been intended to cover only trespass to land, then the mention of actions for damages would have been unnecessary because an action for damages would be within the ambit of "for trespass," by which damages to the land could be recovered. We conclude, likewise, that the language of the statute with respect to "damages" would be meaningless if we were to hold that an action for damages is barred. Accordingly, we hold that article 3994 prevents a judgment of possession in a forcible entry and detainer action from barring a subsequent action for damages for wrongful eviction.

In support of defendant's contention that the judgment in the detainer action bars this suit for wrongful eviction, he cites *Rankin v. Hooks,* 81 S.W. 1005 (Tex.Civ.App.—Dallas 1904, no writ) and *Glau-Moya Parap-*

sychology Training Institute, Inc. v. Royal Life Ins. Co., 507 S.W.2d 824, 826 (Tex.Civ. App.—San Antonio 1974, no writ). In Rankin, this court held that a judgment of possession rendered by a justice court was res judicata with respect to a subsequent suit in the district court as to the validity of a lease. In Glau-Moya, the San Antonio Court of Civil Appeals likewise held that a county court's judgment of possession was res judicata[1] with respect to a suit to determine the validity of an addendum to a lease. Both courts reasoned that the determination of possession necessarily required the court in the forcible detainer action to determine the validity of the lease and, consequently, held that this precluded a subsequent suit with respect to the lease's validity. We do not regard these cases as controlling here because neither construed nor referred to article 3994. Had this statute been called to these courts' attention, they might have arrived at an opposite conclusion. To the extent that they may have considered article 3994 as inapplicable, these decisions are wrong, and we expressly overrule the decision of this court in Rankin.

■ In addition to these cases cited by appellee, we note that Young Women's Christian Ass'n v. Hair, 165 S.W.2d 238 (Tex.Civ.App.—Austin 1942, writ ref'd w.o.m.) and Slay v. Fugitt, 302 S.W.2d 698 (Tex.Civ.App.—Dallas 1957, writ ref'd n.r.e.), likewise erroneously held that a final judgment of possession in a forcible detainer action was res judicata with respect to crucial issues pertaining to the opposing parties' rights under a lease because in the detainer action the court necessarily had to pass on those issues to determine the right to possession. In Hair, the court mentions, but does not construe, article 3994 and relies upon Rankin v. Hooks, supra, for its conclusion. In Slay, this court also mentions article 3994, but does not construe it; rather, this court stated that article 3994 means "that the action

of forcible entry and detainer and the action of trespass to try title or other possessory action in the district court provide cumulative and not exclusive remedies and may be resorted to and prosecuted concurrently." Slay, at 701. In reaching its conclusion, the Slay court cites Hair and Rankin as authority. The ultimate holding in both Hair and Slay, which were passed on by the supreme court writ ref'd w.o.m. and writ ref'd n.r.e., respectively, may have been correct insofar as both dissolved injunctions issued by a district court halting the detainer action in Hair and restraining the issuance of a writ of restitution in Slay because an adequate remedy at law was available in the district court. We regard the holdings of res judicata with respect to the issues passed upon by the court in the detainer action as erroneous dicta. We conclude, therefore, that when properly construed, article 3994 prevents any issue in the detainer action, other than immediate possession, from acting as an estoppel by judgment in a subsequent action in the district court with respect to a determination of the adverse parties' rights under a lease even though this determination may very well result in a different ultimate disposition of possession of the premises. This conclusion is consistent with numerous decisions holding that the forcible entry and detainer action is cumulative of other remedies.

■ Our holding, here, is consistent with the theory that a forcible detainer action is for the primary purpose of resolving who is entitled to immediate possession of the premises. Haginas v. Malbis Memorial Foundation, 163 Tex. 274, 354 S.W.2d 368, 371 (1962). It is cumulative of other remedies, rather than exclusive. Holcombe v. Lorino, 124 Tex. 446, 79 S.W.2d 307, 309 (1935). Thus, a judgment of possession is not intended to be a final determination of whether the eviction is wrongful or not; rather, it is a final determination only with

1. Although both courts used the term res judicata, we doubt that they relied upon this doctrine; instead, both cases appear to rely upon estoppel by judgment. For a discussion of res judicata, see Oak Lawn Preservation Society v. Board of Managers of Dallas County Hospital District, 539 S.W.2d 167, 169 (Tex.Civ.App.— Dallas 1976, no writ).

respect to the right of immediate possession, which determination by a county court at law is not appealable. Tex.Rev.Civ.Stat. Ann. art. 3992 (Vernon 1966); *House v. Reavis,* 35 S.W. *at* 1066. Consequently, the judgment of possession in a detainer suit does not determine the ultimate rights of the parties with respect to any other issue in controversy regardless of whether this other issue results in a change of possession of the premises.

■ Plaintiff also contends that defendant's summary-judgment evidence, which consisted solely of the lease agreement which did not expressly require the landlord to furnish mail facilities, but did contain a provision that the tenant had inspected the premises and found them suitable, was insufficient because such a duty may be implied by law. We cannot agree. The general rule is that there is no implied warranty on the part of the landlord that the leased premises are fit for their intended purpose. *Lynch v. Ortlieb,* 70 Tex. 727, 8 S.W. 515, 516 (1888); *see Cameron v. Calhoun-Smith Distributing Co.,* 442 S.W.2d 815, 816 (Tex.Civ.App.—Austin 1969, no writ); *see also Yarbrough v. Booher,* 141 Tex. 420, 174 S.W.2d 47, 48 (1943). *But cf. Humber v. Morton,* 426 S.W.2d 554 (Tex. 1968) (holding the doctrine of *caveat emptor* inapplicable to the sale of a *new* house).

■ Even if this state adopted the doctrine of implied warranty of habitability with respect to residential leases, as urged in the concurring opinion, we are of the opinion that it would not extend to mail facilities.

Affirmed in part and reversed and remanded in part.

GUITTARD, Chief Justice.

Although I agree that the summary judgment must be reversed insofar as it denies recovery for damages for wrongful termination of the lease, I am reluctant to concur in the holding that summary judgment was proper with respect to the claim for damages for failure to provide facilities for delivery of mail. My reservation concerns the holding that there is no implied warranty on the part of a lessor that premises leased for residential purposes are suitable for their intended use.

Of the three cases cited to support this holding, two concerned commercial leases, which were interpreted as excluding by their terms any warranty of suitability. *Lynch v. Ortlieb,* 70 Tex. 727, 8 S.W. 515 (1888); *Cameron v. Calhoun-Smith Distributing Co.,* 442 S.W.2d 815 (Tex.Civ.App.—Austin 1969, no writ). The third is *Yarbrough v. Booher,* 141 Tex. 420, 174 S.W.2d 47, 48 (1943), in which the lessor of an apartment was held not liable to the lessee for an injury resulting from failure to keep the premises in repair. *Yarbrough* appears to apply the *caveat emptor* rule to a lease of residential property. This rule has recently lost its vigor with the strong trend of decisions and legislation toward protection of consumers. It has collapsed and been pronounced dead in the case of sales of new houses. *Humber v. Morton,* 426 S.W.2d 554 (Tex.1968). In *Humber,* Justice Norvell observed that an ordinary purchaser is not in a position to discover defects in construction and rejected the *caveat emptor* rule as "an anachronism patently out of harmony with modern home-buying practices." *Id.* at 562.

*Caveat emptor* seems to me equally moribund as applied to residential leases. An ordinary lessee is rarely, if ever, expected to spend his own funds to keep the premises fit for occupancy. In other jurisdictions the trend is to reject *caveat emptor* in this context and imply a warranty of habitability. Among the decisions so holding are the following: *Javins v. First National Realty Co.,* 138 U.S.App.D.C. 369, 428 F.2d 1071, cert. den. 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1971); 40 A.L.R.3d 646; *Lemle v. Breeden,* 51 Haw. 426, 462 P.2d 470, 40 A.L.R.3d 637 (1969); *Boston Housing Authority v. Hemingway,* 363 Mass. 184, 293 N.E.2d 831 (1973); *King v. Moorehead,* 495 S.W.2d 65 (Mo.Ct.App.1973); *Marini v. Ireland,* 56 N.J. 130, 265 A.2d 526, 40 A.L.R.3d 1356 (1970); *Academy Spires, Inc. v. Brown,* 111 N.J.Super. 477, 268 A.2d 556

(1970). A full discussion of the matter may be found in Line, *Implied Warranties of Habitability and Fitness for Intended Use in Urban Residential Leases,* 26 Baylor L.Rev. 161 (1974), and Comment, *The Implied Warranty of Habitability in Landlord-Tenant Relationships: The Necessity of Application in Texas,* 5 St. Mary's L.J. 64 (1973). Since the *caveat emptor* rule as applied in *Yarbrough* is directly contrary to this trend, as well as out of harmony with the rationale of *Humber v. Morton,* I am not sure that the present supreme court would follow it. Nevertheless, since it is a decision of the supreme court, I agree that this court should not presume to overrule it. On this basis, reluctantly, I concur.