Willie **SIMS**

v.

**CENTURY KIEST APARTMENTS.**

No. 19368.

Court of Civil Appeals of Texas, Dallas.

May 5, 1978.

Rehearing Denied May 31, 1978.

Michael M. Daniel, Dallas, for appellant.

Dan W. Shieder, Jr., Dallas, for appellee.

GUITTARD, Chief Justice.

■ Willie Sims brought this suit against Century Kiest Apartments, his former landlord, for damages for a retaliatory eviction. The principal question is whether a former tenant has a cause of action for termination of his periodic tenancy and eviction by forcible detainer proceedings in retaliation for the tenant's reporting of code violations to city authorities. We hold that such a cause of action, if established by evidence, does exist, and, consequently, that the trial court erred in rendering summary judgment for the landlord on the pleadings.

Sims alleged that he had been a tenant at Century Kiest Apartments for approximately nine years under an oral tenancy from week to week; that during his occupancy the condition of the premises had steadily deteriorated; that he had repeatedly complained to the management about the problem and had helped organize a tenants' council; that acting on his own and as officer of the council, he had reported to city authorities violations of various housing, building and health codes; that although his rent was fully paid, he had received from the landlord a written notice to vacate the apartment within ten days; that his tender of the full rent due on the next rent-payment date was refused; that the landlord had filed a forcible detainer suit

against him and recovered judgment for possession of the premises in the justice court and also, on appeal, in the county court at law; that the landlord's termination of the tenancy was done with specific intent to retaliate against him for organizing and belonging to the tenants' council, complaining to the management about needed repairs and maintenance, and reporting code violations to various departments of the city; and that as a result of the termination of the tenancy, he was injured by being forced to move out of his home and "has suffered a chilling effect of his exercise of his First Amendment rights." He seeks recovery of his moving expenses, the additional rent he had to pay for a comparable apartment, damages for "deprivation of his First Amendment rights," punitive damages, and his attorney's fee.

The landlord filed a motion for summary judgment on the sole ground that plaintiff was a tenant from week to week, that the landlord had "an absolute right to terminate a tenancy at will when proper notice is given to the tenant of such termination," and that it was undisputed that such a notice had been given. Although the motion was not accompanied by affidavits or any other summary-judgment proof, the tenant filed an opposing affidavit tending to support the allegations of his petition.

The landlord attempts to justify the summary judgment in its favor on the ground that it has an absolute right to terminate the tenancy on proper notice at the end of any week, and then to recover possession of the premises, and that its motive in doing so does not give rise to an action for damages. The tenant recognizes the rule that ordinarily a landlord may terminate a periodic tenancy without cause, but contends that if it does so for the purpose of interfering with the tenant in the exercise of his constitutional rights of free speech and free assembly, or in retaliation for his exercise of those rights, a legal wrong has been done for which an action for damages will lie.

We agree with the tenant that the petition is sufficient to state a cause of action for damages. Although no reported decision in Texas has dealt with the question, the legal consequences of a retaliatory eviction have been considered in a number of other jurisdictions. A crucial consideration is whether the tenant's rights are infringed. The leading case holding that the tenant's rights are infringed is *Edwards v. Habib,* 130 U.S.App.D.C. 126, 397 F.2d 687 (1968), *cert. denied,* 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969), in which the United States Court of Appeals for the District of Columbia Circuit allowed a defense of retaliation in a summary-possession proceeding on the ground that the policy of Congress in directing the promulgation of housing regulations in the District of Columbia for the benefit of tenants would be contravened by allowing evictions for reporting violations of such regulations. By resting its decision on the public policy implicit in the statute, the court avoided a decision based solely on constitutional grounds. Acknowledging that the summary-possession statute made no provision for such a defense, the court said:

> "It is true that in making his affirmative case for possession, the landlord need only show that his tenant has been given the 30-day statutory notice, and he need not assign any reason for evicting a tenant who does not occupy the premises under a lease. But while the landlord may evict for any legal reason or for no reason at all, he is not, we hold, free to evict in retaliation for his tenant's report of housing code violations to the authorities. As a matter of statutory construction and for reasons of public policy, such an eviction cannot be permitted." [*Id.* 130 U.S.App.D.C. at 409, 397 F.2d at 699]

Concerning the practical effect of permitting eviction in retaliation for reporting code violations, the court observed:

> "There can be no doubt that the slum dweller, even though his home be marred by housing code violations, will pause long before he complains of them if he fears eviction as a consequence. Hence an eviction under the circumstances of this case would not only punish appellant

for making a complaint which she had a constitutional right to make, a result which we would not impute to the will of Congress simply on the basis of an essentially procedural enactment, but also would stand as a warning to others that they dare not be so bold, a result which, from the authorization of the housing code, we think Congress affirmatively sought to avoid." [*Id.* 130 U.S.App.D.C. at 412, 397 F.2d at 701]

This decision has been followed in a number of cases in the state courts.[1]

Relief against retaliatory eviction has also been granted in the federal courts. There, the main consideration has been whether "state action" was involved so as to provide a right of action under the Fourteenth Amendment of the United States Constitution and under the Civil Rights Act, 42 U.S.C. § 1983. In at least one case, it has been held that invocation of a state remedy for summary possession, such as our forcible detainer procedure, is in itself sufficient state action to establish a violation of federal constitutional rights if the landlord is motivated solely by retaliation against the tenant for reporting violations of housing regulations. *Hosey v. Club Van Cortlandt,* 299 F.Supp. 501, 506 (S.D.N.Y.1969). Other federal courts have required some kind of special state support of the landlord's position other than merely providing a "neutral" remedy available to all landlords before state action has been recognized. *McQueen v. Druker,* 438 F.2d 781, 785 (1st Cir. 1971); *LaVoie v. Bigwood,* 457 F.2d 7 (1st Cir. 1972); *Walton v. Darby*

*Town Houses, Inc.,* 395 F.Supp. 553, 559 (E.D.Pa.1975). In all of the federal cases cited, the courts recognized that an eviction in retaliation for the tenants' complaints to public officials had a seriously adverse effect on the tenant's rights because of the practical problem posed to the tenant in requiring him either to forego his constitutional rights of free speech and free association or to vacate his rented home and seek other accommodations.

We need not, however, determine whether a retaliatory eviction without state action is an actionable violation of the tenant's constitutional rights if any other ground exists to hold it to be a legal wrong. In *Edwards v. Habib, supra,* the court found such a ground to exist in the policy of the housing regulations to protect tenants from unsanitary and unsafe housing conditions. Such regulations cannot be effectively enforced, the court said, if tenants, who are the principal persons interested in reporting violations, are intimidated by threats of eviction; consequently, eviction for the sole purpose of retaliation for reporting such violations cannot be permitted and must be considered wrongful.

The public policy recognized in *Edwards v. Habib* is a particular application of the general policy to encourage, rather than discourage, the reporting of violations of law to proper authorities. The leading case on this point is *In re Quarles,* 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080 (1895). There the petitioner was charged with conspiracy to injure or intimidate a citizen in the free exercise of a right under the Constitution

---

1. *Schweiger v. Superior Court of Alameda County,* 3 Cal.3d 507, 90 Cal.Rptr. 729, 476 P.2d 97 (1970) (tenant exercising statutory repair-and-deduct remedy is protected against retaliatory rent increase and eviction); *E. & E. Newman, Inc. v. Hallock,* 116 N.J.Super. 220, 281 A.2d 544, 546 (1971) (retaliatory eviction allowed as defense to dispossession action under statute making such reprisal a misdemeanor); *Markese v. Cooper,* 70 Misc.2d 478, 333 N.Y.S.2d 63, 73 (Monroe County Ct. 1972) (defense of retaliatory eviction allowed in summary possession action); *Dickhut v. Norton,* 45 Wis.2d 389, 173 N.W.2d 297 (retaliatory eviction allowed as defense to unlawful detainer action in view of urban renewal statute compa-

rable to Tex.Rev.Civ.Stat.Ann. art. 1269*l*–3 (Vernon 1965). *See also Robinson v. Diamond Housing Corp.,* 150 U.S.App.D.C. 17, 463 F.2d 853 (1972) (extending holding in *Edwards v. Habib* to protect from retaliatory eviction a tenant who had successfully interposed housing code violations as defense in previous eviction proceeding). *See generally Developments in Contemporary Landlord-Tenant Law*: An Annotated Bibliography, 26 Vanderbilt L.Rev. 689, 708–709 (1973); Annot., 40 A.L.R.3d 753 (1971). A contrary decision, *Aluli v. Trusdell,* 54 Haw. 417, 508 P.2d 1217, 1220 (1973), has been overruled by statute. Haw.Rev.Stat. § 521–74 (1976).

or laws of the United States by interfering with the reporting of violations of the federal internal revenue laws. The Supreme Court rejected the contention that a private citizen had no federally protected right to report such violations and quoted the principle stated in the earlier case of *Ex parte Yarborough*, 110 U.S. 651, 662, 4 S.Ct. 152, 157, 28 L.Ed. 274 (1884), as follows:

> [I]t is the duty of [the] government to see that he may exercise this right freely, and to protect him from violence while so doing or on account of so doing. This duty does not arise solely from the interest of the party concerned, but from the necessity of the government itself
>
> . . . .

The court observed that this right does not depend on any particular amendment to the Constitution but "arises out of the creation and establishment by the Constitution itself of a national government, paramount and supreme within its sphere of action." We recognize that the interference in *Quarles* was violent, and, therefore, in itself a violation of local law. It was held to be a violation of federal law, however, not because of any express enactment, but only because of the essential public policy to protect persons who report violations.

The same public policy exists in all states. *Lachman v. Sperry-Sun Well Surveying Co.*, 457 F.2d 850, 853 (10th Cir. 1972). It has been expressly recognized in Texas and has been found more compelling than a competing policy favoring the use of grievance procedure in labor-management disputes. Thus, it had been held to invalidate a provision in a collective-bargaining agreement tending to deter prompt reports of criminal offenses by the persons immediately affected. *Goodyear Tire & Rubber Company v. Sanford*, 540 S.W.2d 478, 484 (Tex.Civ.App.—Houston [14th Dist.] 1976, no writ). In that case, the court said:

> For the orderly functioning of our society, people must be completely free from all forms of coercion against reporting violations of the law. Indeed, it is their duty to do so.

Under these authorities, a citizen has a right to be free to report violations of the law without intimidation or coercion. This right need not be expressly provided by statute because it is implied from the very existence of the remedial legislation. This principle was stated in *Edwards v. Habib, supra,* as follows:

> The notion that the effectiveness of remedial legislation will be inhibited if those reporting violations of it can be intimidated is so fundamental that *a presumption against the legality of such intimidation can be inferred as inherent in the legislation, even it if is not expressed in the statute itself.* [Emphasis added.] 397 F.2d at 701.

We need not consider whether a cause of action exists generally in favor of any informant who suffers reprisals for reporting violations of the law. The question here is whether a member of the class for whose benefit remedial legislation has been enacted has such a cause of action. In this situation, the public policy against interference with reports of violations is particularly strong. Effective enforcement of such legislation depends largely on reports of violations by the persons most directly affected, and if those persons are so intimidated or coerced by fear of retaliation as to prevent their reporting of violations, the violator is enabled to persist in his violations without suffering whatever civil or criminal penalties may be provided.

In the present case, we have no statute before us comparable in all respects to that found in *Edwards v. Habib* to imply a prohibition against retaliatory eviction. Plaintiff alleges only that his tenancy was terminated with the specific intent to retaliate against him for reporting violations of "various housing, building and health codes of the city of Dallas." Although the terms of these codes are not before us, we must presume on this appeal from a summary judgment on the pleadings that the petition could have been amended to include specific allegations of the ordinances alleged to have been violated and that these allegations could have been supported by proof. *See Texas Department of Corrections v. Herring,* 513 S.W.2d 6, 9 (Tex.1974). In

order to prevail on its motion for summary judgment, defendant had the burden to meet plaintiff's case as pleaded. *Cook v. Brundidge, Fountain, Elliott & Churchill,* 533 S.W.2d 751 (Tex.1976). Plaintiff had no burden to produce the ordinances in response to the motion; rather, defendant had the burden, as a moving party, to produce them if it contended that they did not support the allegations of the petition. *Gaddis v. Smith,* 417 S.W.2d 577 (Tex.1967). *See also Cook v. Brundidge, Fountain, Elliott & Churchill, supra.* The only ground alleged in the motion for summary judgment is that the landlord had an absolute right to terminate the tenancy at will when proper notice is given. Thus, our question on this appeal is not whether there are such ordinances, but whether such ordinances, if proved, would establish that a tenant is within the class of persons for whose benefit such ordinances were enacted, so as to provide a basis for a cause of action against the landlord for interference with his reporting of violations.

The ordinances alleged presumably were enacted under the authority of the city's home-rule charter, which is authorized by article XI, § 5, of the Texas Constitution. Moreover, article 1175, § 35, Tex.Rev.Civ.Stat.Ann. (Vernon Supp.1977) expressly authorizes enactment of ordinances which require "the demolition or repair of buildings which are dilapidated, substandard, or unfit for human habitation and which constitute a hazard to the health, safety, or welfare of the citizens." This statute is a recognition by the legislature that the public welfare may require that dwellings offered for rental be safe and fit for habitation. *Kamarath v. Bennett,* 568 S.W.2d 658 (Tex., 1978). Although article 1175 does not in itself provide a comprehensive system of housing regulations like the statute under consideration in *Edwards v. Habib,* we must presume that the ordinances alleged in the petition, enacted under the

authority of this statute or otherwise, did provide such a system and did impose various duties on the owners of rental property, as well as others, for the health, safety and welfare of occupants of such property, including tenants and their families. Thus, there is the same reason here to imply a prohibition against retaliation against a tenant for reporting violations as in *Edwards v. Habib.* The fact that the codes in question are effective only within the city of Dallas, rather than throughout the state, as in the case of a general statute, does not affect the problem. The controlling principle is the policy against intimidation or coercion that would discourage or inhibit reports of violations of the law by persons for whose benefit the law has been enacted.

Defendant contends that regardless of any public policy against interference with reporting of violations of the law, he has an absolute right to terminate a periodic tenancy by giving the notice prescribed by article 5236a, Tex.Rev.Civ.Stat.Ann. (Vernon Supp.1978), which provides that a monthly tenancy may be terminated on one month's notice, and, if the rent is payable at periods of less than a month, the period of notice is sufficient if it is equal to the interval between the times of payment. This statute is consistent with the common-law rule that the landlord has the power to terminate a periodic tenancy on reasonable notice, as recognized in cases such as *Holcombe v. Lorino,* 124 Tex. 446, 79 S.W.2d 307 (1935), but it defines more particularly the period of the notice and provides that the tenancy may be terminated on such notice before the end of a rent-paying period, with a proportionate abatement of the rent. Recognition of the landlord's power to terminate the tenancy, whether common-law or statutory, does not establish that he has a legal right to do so for the purpose of retaliation against the tenant for reporting the landlord's violation of the law.[2] Our

---

**2.** This distinction between a "right" and a "power" is consistent with the classical analysis of jural relations by Professor Hohfeld in his well-known article, *Some Fundamental Legal Conceptions as Applied in Legal Reasoning,* 23 Yale L.J. 16 (1913). The same analysis is adopted in Restatement of Property §§ 1, 3 (1936). These authorities recognize that a

question is whether his termination for that purpose is a legal wrong for which an action for damages will lie.

■ ▪ We conclude that the tenant has a legal right to be free of interference with his reporting of violations of laws enacted for his benefit and that the landlord has a correlative duty not to interfere with the tenant's exercise of that right. If the tenant had no such right, the public policy to encourage reports of violation of the law would be substantially frustrated. Accordingly, although the landlord may have the legal power to terminate the tenancy, in our opinion the law recognizes no legal right to do so for the sole purpose of retaliation when otherwise he would have permitted the tenant to continue his tenancy. On this basis, we hold that retaliatory eviction is a legal wrong for which an action for damages will lie.

Defendant insists that to recognize such a cause of action would create a defense of retaliatory eviction in a forcible detainer case and thus, in effect, would extend the tenancy indefinitely, contrary to law and contrary to the agreement of the parties. Although we rely on *Edwards v. Habib* and the other eviction cases cited as authority for the view that retaliatory eviction is wrongful, our present holding does not go so far as to hold that it would constitute a defense in forcible detainer. An argument can be made to the effect that the power to terminate exists, notwithstanding violation of the tenant's right to be free of interference in reporting violations, since the tenant has no privilege to continue his occupancy if the tenancy on which that privilege depends has terminated. There is force also to the argument that whether such termination is wrongful cannot properly be decided in a forcible detainer proceeding, which determines only who shall have the immediate possession and cannot be appealed beyond the county court. The rule is settled that a judgment for the landlord in forcible retainer does not bar a later action

for damages for wrongful eviction. *Johnson v. Highland Hills Drive Apartments,* 552 S.W.2d 493, 494 (Tex.Civ.App.—Dallas 1977, writ ref'd n. r. e.); *McCloud v. Knapp,* 507 S.W.2d 644, 647 (Tex.Civ.App.—Dallas 1974, no writ). Since forcible detainer is a summary remedy, the issues should be narrow and uncomplicated. Thus we do not decide the question of whether retaliatory eviction would be a defense in a forcible detainer case.

■ Since our holding is based on the public policy of the state implicit in its statutes and in ordinances, we need not confront the question of whether a cause of action for retaliatory eviction exists based on public policy against interference with the exercise of the constitutional rights of freedom of speech, freedom of assembly, and freedom to petition for redress of grievances. Tex.Const., art. I, §§ 8, 27; U.S.Const., Amends. I, XIV. Neither do we hold that this kind of wrong is a "prima facie tort," based simply on harm intentionally caused without justification or excuse. *See* Forkosch, *An Analysis of the "Prima Facie Tort" Cause of Action,* 42 Corn.L.Q. 465 (1957); Schoshinski, *Remedies of the Indigent Tenant: Proposal for Change,* 54 Geo.L.J. 519, 548 (1966). In deciding such an eviction to be wrongful, we hold only that if the evidence shows that the tenant probably would not have been evicted had he not reported violations of regulations enacted for his benefit, then such an eviction is an affirmative wrong for which an action for damages will lie in favor of the aggrieved tenant.

The scope of this holding is quite narrow. It would not extend, for example, to a case in which the evidence shows that the tenant's complaints were not made in good faith, or to a case in which the landlord had affirmative grounds for eviction, such as nonpayment of rent. The question of damages may also be difficult, but it is not now before us. Consequently, we do not pass on whether any of the elements of damages

power may be exercised effectively, but nonetheless wrongfully, if exercised in violation of a duty. Hohfeld, *op. cit.,* at 52, 53; Restatement

of Property § 3, Comment a, Illustrations 2, 3 (1936).

alleged in the tenant's petition are recoverable, even if the elements of a retaliatory eviction are shown.

The objection is made that this court is engaging in judicial legislation by creating a cause of action for retaliatory eviction, and that such a course should be left to the legislature, which can strike a more delicate balance of the competing interests and can impose precise limitations appropriate to those interests. We agree that a well-drawn statute would be a superior solution to this problem for future cases. Such a solution, however, is not available in this case. The legislature cannot determine whether this particular plaintiff has stated in his petition a cause of action for damages on which he is entitled to present his evidence at a trial. That is a question which we have the responsibility to decide, subject to review by the Supreme Court of Texas.

Of course, we must consider the effect of our decision as a precedent until the supreme court rules, but we do not regard it as a legislative decision except in the sense that the decision in any case of first impression sets a precedent. In that sense, a decision denying relief would be no less legislative. We cannot accept the view that if the question before us has never been decided before, our decision must always be to deny relief. That view is opposed to the whole development of the common law. Our decision overrules no precedents and disregards no established rules. If legislation is needed to govern future cases of this sort, it may be enacted, regardless of this decision.

Our former opinion is withdrawn and this opinion is substituted. Otherwise, defendant's motion for rehearing is overruled. The judgment of the trial court is reversed and the cause is remanded.

AKIN, Justice, dissenting.

I cannot agree that a cause of action for retaliatory eviction exists based upon public policy as advanced by the majority. Those of us in the judiciary may think that we perceive that which is in the public interest better than the elected legislators of the people; nevertheless, it is the function of our legislature, rather than the courts, to declare the public policy of this state. *Carpenter v. Sheppard,* 135 Tex. 413, 145 S.W.2d 562, 565 (1940); *Scarborough v. Payne,* 198 S.W.2d 917, 919 (Tex.Civ.App.— San Antonio 1947, writ ref'd); *Houston-American Life Insurance Co. v. Tate,* 358 S.W.2d 645 (Tex.Civ.App.—Waco 1962, no writ). In my view, the holding of the majority usurps the function of the legislature by the judiciary, and contradicts the basic concepts of our form of government embodied in the Constitution of the United States and of the State of Texas, both of which sharply delineate the functions of the legislature, the executive, and the judiciary. The function of the legislature is to enunciate the public policy, the duty of the executive to execute that policy, and the duty of the judiciary to construe those statutes passed by the legislature and to determine whether they contravene the constitutions of the State of Texas or of the United States. It is not the function of the judiciary to usurp the legislative function under the guise of public policy. As Mr. Justice Jackson stated in *Collins v. Hardyman,* 341 U.S. 651, 663, 71 S.Ct. 937, 942, 95 L.Ed.2d 1253 (1951), "It is not for this Court to compete with Congress or attempt to replace it as the nation's law-making body." If, as some think, the landlord-tenant relationship need be changed, the legislature is the place to obtain that change, rather than in the courts.

The judiciary should not act where the legislative branch has apparently chosen not to do so. The legislature in both 1973 and 1975 revised substantially the landlord-tenant statutes in this state, giving tenants far more rights than they had under prior law. Nevertheless, the legislature apparently chose not to grant tenants a cause of action based on retaliatory eviction. Thus, the majority has chosen to ignore the legislature's obvious will as well as the historic distinction in the functions of the legislature and the judiciary. It is never the judiciary's function to declare that public policy it thinks desirable or just; rather it

is our duty to apply those policies clearly expressed by the legislature through statutes. The majority opinion establishes a dangerously oligarchic precedent.

The opinion of the majority reflects the Platonic view that philosopher kings know that which is best for the people, rather than the people themselves. Hopefully our judiciary is blessed with such philosophers, but I cannot accept this contravention of the traditional functions of the legislature and the judiciary.

The sound logic behind the sharp delineation between the function of the legislature and that of the judiciary is best illustrated by the very question decided by the majority of this court. If a bill granting a tenant a cause of action for retaliatory eviction was introduced into the legislature for consideration, interested people in the State of Texas would have an opportunity to express their wishes to their legislators, who, in turn, could fully debate all aspects of the question. The legislature could then determine by vote whether the proposed bill would become law, thus expressing the public policy. Such an opportunity for input is not afforded the people of this state when the majority of an appellate court, composed of three members, makes the determination of what is in the interest of the public and effectively legislates through judicial decree a remedy for an assumed wrong. In granting a cause of action in tort for retaliatory eviction, the majority of this court has gone further than any court, state or federal.

The public policy apparently relied on by the majority to justify its novel holding is the particular application of the general policy to encourage, rather than discourage, the reporting of violations of the law to proper authorities. They rely primarily on the Supreme Court's decision in In Re Quarles, 158 U.S. 532 (1895). I cannot agree that that case is applicable to the facts presented here. Quarles was an original writ of habeas corpus where the relators sought release from prison, having been convicted of conspiracy for injuring and intimidating a person because the victim had reported violations of the internal revenue laws. The actions of relators violated a federal statute prohibiting anyone from conspiring "to injure, oppress, threaten or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same." In holding that relators violated this statute, the Court found that the threatened right of the victim was the right of every citizen to assist in prosecuting and in securing punishment of any breach of the peace of the United States. Quarles is not authority to support the majority's public policy predicate. In the first place, the right of a citizen in reporting violations of the laws is to secure punishment for a breach of peace. Here, no breach of the peace exists. Second, the actions of the relators in Quarles violated a statute which provided punishment of conspiracies to oppress citizens from reporting violations of federal law; no such statute exists here. Thus, it was from this statute that the court in Quarles found a public policy, whereas here we have no such declaration of public policy by our legislature. Public policy of the state cannot be found in city ordinances. It would be specious to state that the public policy of the City of Dallas is the public policy of the State of Texas. Thus, in the absence of a clear declaration of public policy by the state legislature, I do not regard Quarles as authority to find the public policy to support the majority's holding.

The majority also states that this public policy has been expressly recognized in Texas in the case of Goodyear Tire and Rubber Co. v. Sanford, 540 S.W.2d 478 (Tex.Civ. App.—Houston [14th Dist.] 1976, no writ). However, Goodyear Tire, also is distinguishable. In Goodyear Tire, supra, an employee successfully sued to set aside an arbitrator's award under a union contract affirming the employee's discharge by the company because the employee had filed criminal assault charges against his supervisor. In affirming the trial court's judgment vacating the arbitrator's decision, that court held that a labor agreement which provided that

court action could not be taken until all grievance procedures had been exhausted was inapplicable where the employee had filed both a grievance and criminal assault charges against his supervisor. The rationale of the court was that it would be a violation of public policy to enforce the labor contract in that it would obstruct the enforcement of the laws of the state. Although I agree that this is the law, the case does not apply to our facts. Here the only contract was an oral one providing for a week to week tenancy and there was *no prohibition* in the contract against reporting housing code violations. Consequently, unless there is a contractual prohibition against reporting of these housing code violations there is no violation of public policy. Additionally, since the allegations here are reported violations of city ordinances, not state statutes, there can be no violation of the public policy of the State of Texas.

The majority apparently rests its holding on the rationale of *Edwards v. Habib,* 130 U.S.App.D.C. 126, 397 F.2d 687 (1968), *cert. denied,* 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969). That case is distinguishable from the case here in that Congress had enacted extensive housing codes for the District of Columbia, thus expressing the public policy of the Congress with respect to the question before that court. In fact, even the quotations from *Edwards* in the majority opinion establish that statutory construction was a ground for that decision. *Id.* 130 U.S.App.D.C. 138, 140–141, 397 F.2d 699, 701–702. No such extensive and specific codes have been enacted by our legislature. This distinction is poignantly enunciated by the concurring opinion in *Edwards* which notes that a Congress which enacts a housing code together with its enforcement cannot be taken to have excluded retaliatory eviction as a defense to a routine statutory eviction statute also promulgated by Congress. *Edwards v. Habib, supra,* rested its decision on the ground that Congress by enacting the housing code with enforcement provisions implicitly intended to permit retaliatory eviction as a defense to a forcible detainer action to effectuate that legislation.

Nevertheless, I do not agree with the rationale of either the majority opinion or the concurring opinion in that case, instead, I agree with the view, expressed by the dissent, that a specific act of Congress was required to legislate retaliatory eviction as a defense to a forcible detainer action. The dissent also poses the question, unanswered by the majority, that such judicial legislation permits the landlord to be deprived of his property without due process of law. In *Edwards,* the majority opinion's basis of divining the congressional intent with respect to enforcement of the housing codes by permitting retaliatory eviction as a defense, is weakened, if not indeed contradicted, by footnote 52 which notes that three bills had been introduced in Congress dealing specifically with retaliatory eviction, but none were reported out of committee. *Edwards,* 130 U.S.App.D.C. at 141, 397 F.2d at 702. In my view, this shows a congressional intent contrary to that intent derived in the majority's opinion. Consequently, I do not regard *Edwards v. Habib, supra,* as persuasive authority to hold that a suit may be maintained in tort for an alleged retaliatory eviction.

The majority opinion observes that the ordinances in question were presumably enacted under the authority of the city's home rule charter and they specifically point to Article 1175 § 35, Tex.Rev.Civ.Stat.Ann. (Vernon Supp.1978) which gives home rule cities the authority to enact ordinances requiring the demolition or repair of buildings. They state that this shows that the legislature has recognized that the public welfare may require that dwellings offered for rental must be safe and fit for habitation. In my view, reliance on this article is misplaced in that it in no way establishes a particular public policy. Indeed, in no way can it be read as adopting a public policy for the entire state when Article 1175 itself applies only to home rule cities. Is the majority holding that only home rule cities have this policy to encourage the reporting of violations? Even under Article 1175, home rule cities may adopt conflicting ordinances to deal with identical subjects.

Thus, it is absurd to maintain that diverse local ordinances express a single legislative policy.

In nearly all jurisdictions, where either a cause of action for retaliatory eviction exists or where such may be asserted defensively, a specific statute so stating was enacted by the legislature. Texas has no such statute. Accordingly, in my view, the rights of the parties here are controlled by Article 5236a, Tex.Rev.Civ.Stat.Ann. (Vernon Supp.1978), which is the only provision concerning termination of tenancies in Texas. It provides:

> . . . [W]hen the rent reserved in a lease is payable at periods of less than a month, the time of the notice of termination is sufficient if it is equal to the interval between the times of payment
>
> . . .

The notice here was timely since it gave Sims ten days when the pay period was weekly. Since the landlord-tenant relationship is one of contract, the tenant may remain in the premises only until such time as the landlord terminates the lease. The landlord's right to possession is an incident of ownership, while the tenant's right of possession is dependent upon the agreement with the landlord. Thus, Sims merely had an expectancy that his lease would be extended for only another week. *Holcombe v. Lorino,* 124 Tex. 446, 79 S.W.2d 307 (1935). To hold, as the majority does, that there is a limitation of the landlord's right to terminate, not only alters the contract between landlord and tenant, but is also in conflict with this explicit statute. Consequently, I would hold, as did the trial court, that the landlord's motive in evicting Sims was immaterial.